## EDINBURG IRR. CO. v. PASCHEN et al.
### (No. 6414.)

(Court of Civil Appeals of Texas. San Antonio. May 26, 1920. Rehearing Denied June 29, 1920.)

**1. Waters and water courses ☞247(2)—Injunction will lie against irrigation company which contracts beyond capacity.**

Where an irrigation company contracts to irrigate land beyond its capacity, a suit for damages is not an adequate remedy to aggrieved landowners, and one for mandatory injunction to compel the furnishing of water lies.

**2. Waters and water courses ☞232—Landowners not affected by published notice in receivership proceedings against irrigation company.**

Landowners holding contracts of irrigation company to supply water to their lands were not affected by published notice in receivership proceedings against company to present claims, though such notices are binding on parties having claims against property of company in receivership, proceedings not having been instituted to affect rights of landowners.

**3. Judgment ☞17(1), 18(1)—Judgment without pleading and process as basis a nullity.**

The court is without jurisdiction to render judgment against one party in favor of another without a pleading filed as a basis in favor of such party, with process duly served upon him, such judgment being a nullity.

**4. Constitutional law ☞312—Easements and water rights of landowners cannot be taken without day in court.**

Easements and water rights of landowners could not be taken and destroyed in receivership proceedings against an irrigation company without the owners' having their day in court, such procedure being tantamount to deprivation of property without due process in violation of state and federal Constitutions.

**5. Waters and water courses ☞154(1)—Water rights granted landowners easements appurtenant to land.**

Water rights originally granted to landowners are easements carved out of the fee simple of an irrigation system, attached to the respective tracts, appurtenant thereto, and part thereof from execution and delivery of the deeds conveying the rights, under Vernon's Sayles' Ann. Civ. St. 1914, art. 5002e.

**6. Receivers ☞142—Purchasers of irrigation system from receiver took subject to covenants to furnish water.**

Purchasers of an irrigation system in receivership proceedings could acquire no higher title than the receiver acquired, and were charged with all obligations of irrigation company and with all its covenants to furnish water.

**7. Waters and water courses ☞232—Irrigation companies quasi public service corporations.**

Irrigation companies and those under whom they hold are quasi public service corporations, required to perform their duty to the public when paid therefor.

**8. Constitutional law ☞70(1) — Requiring company to furnish water at same rates as for like lands is judicial question.**

An irrigation company by its contracts with landowners having fixed rates for land, the court, in suit by other owners of like lands to compel the company to furnish water as its predecessor had contracted, could require it to comply with its obligations on the same terms as to rates as the other lands without invading rate-making power of Legislature.

**9. Waters and water courses ☞247(2)—That irrigation company has sold more land than it can supply no defense.**

An irrigation company cannot defend suit for mandatory injunction to compel it to furnish water to landowners as contracted by setting up that it has sold and continues to sell more land than it can reasonably put water upon.

Appeal from District Court, Hidalgo County; V. W. Taylor, Judge.

Suit by William E. Paschen and others against the Edinburg Irrigation Company. From an order awarding preliminary mandatory writ of injunction, defendant appeals. Affirmed.

Glasscock, McDaniel & Bounds, of McAllen, for appellant.

Don A. Bliss, of San Antonio, and W. L. Dawson, of Mission, for appellees.

COBBS, J. This is an appeal from the order of the trial court awarding a preliminary mandatory writ of injunction compelling the Edinburg Irrigation Company to furnish supplies of water to appellees to irrigate their respective tracts of land during the pendency of the suit upon compliance by appellee with certain requirements set forth in the order.

The appellants have filed assignments of error, but no brief. The appellees have filed their brief containing a statement of the case, propositions of, and authorities to support, their contention. The case was also argued by both parties orally.

The appellees W. E. Paschen and J. R. Davidson, purchased certain tracts of land in Hidalgo county, Tex., with permanent water rights appurtenant thereto. These permanent water rights appurtenant to said respective tracts of land were a part and parcel of the purchases and constituted a part of the consideration for what they agreed to pay for said lands with the water rights attached and appurtenant thereto.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

These water rights were evidenced by instruments conveying the water rights and embodying at the same time contracts; and these instruments were executed and delivered by the Valley Reservoir & Canal Company, a corporation duly incorporated under the laws of Texas as a public service irrigation corporation. But the deeds conveying the lands referred to these water right conveyances and reserved liens on the respective tracts of land to secure compliance by the respective grantees in the deeds and conveyances of the water rights of the terms of the contracts embodied in the said conveyances of the water rights.

The Valley Reservoir & Canal Company, at the time, owned and operated an irrigation system that had been constructed for the purpose of irrigating a large body of land owned in part by John Closner and W. F. Sprague, owned in part by the Edinburg Town-Site Company and owned in part by the said Valley Reservoir & Canal Company. John Closner and W. F. Sprague owned all the capital stock of the Valley Reservoir & Canal Company and of the Edinburg Town-Site Company, another corporation, and they controlled the affairs of said two corporations.

The appellees had improved their lands, the said Paschen having prepared one of four 40-acre tracts for irrigation in the year 1913, and having prepared another of said 40-acre tracts for irrigation in the year 1914; and the said Davidson having prepared his tract for irrigation in the year 1914. Appellees each paid the flat rate required by the terms of their water contracts, and each paid the amounts required for an actual supply of water for the respective years on their respective tracts. But the Valley Reservoir & Canal Company did not have adequate facilities for supplying water to irrigate the lands, and failed to supply sufficient water, with the result that appellees each lost their crops for said years. An arrangement was then made by which the Valley Reservoir & Canal Company agreed to furnish appellees with water for their respective tracts for the succeeding year as a credit on the damages appellees had suffered by reason of the loss of their crops during the preceding year, as well as the flat rate and the rate for actually supplying water. The Valley Reservoir & Canal Company again failed to furnish a sufficient supply of water, and, by reason thereof, appellees' crops were again a practically total failure.

Appellees having demanded payment by the Valley Reservoir & Canal Company of the damages that appellees had sustained by reason of the failure to supply water, the Valley Reservoir & Canal Company refused to supply appellees with any more water at all. While this dispute was pending, the American National Insurance Company and the San Antonio Loan & Trust Company, corporations, to which corporations Closner, Sprague, and the Valley Reservoir & Canal Company were heavily indebted, and which held mortgage liens on all their property, brought suit in the district court of Cameron county against Closner, Sprague, the Valley Reservoir & Canal Company, and the Edinburg Town-Site Company to recover the amounts of their respective debts and to foreclose their mortgage liens on the properties, including the irrigation system of the Valley Reservoir & Canal Company. These mortgage liens were acquired by the said American National Insurance Company and the San Antonio Loan & Trust Company long after appellees had acquired their water rights.

Receivers of all of said properties were appointed by said district court of Cameron county in said suit; that is to say, receivers of the properties of Closner, Sprague, the Valley Reservoir & Canal Company, and the Edinburg Town-Site Company were appointed; and, as a matter of course, orders were made by said district court authorizing the issuance of receivers' certificates, fixing a lien on said properties in the hands of said receivers securing the amounts of said certificates, making said lien on said properties superior to all other liens on said properties, and authorizing the sale of said certificates. A sale of said certificates was made.

Appellees were never made parties to said suit, nor did they ever appear therein, either in person or by an attorney authorized to appear for them.

The said district court made an order in said suit undertaking to require any and all persons having any interest in or claim against said properties in the hands of the receivers to intervene in said suit, and to assert such interest, or claim within a certain time. Publication of this order was made in two newspapers, one published in Cameron county and one in Hidalgo county. Another order was made in said suit extending the period of time within which persons having or claiming any interest in said properties or claims against the same might intervene, and a like publication was made of this order. Both of said orders provided that a failure to intervene within the periods stated therein should have the effect of barring the persons having such interests, or claiming such interests, or having claims against said properties from ever thereafter asserting the same. Appellees never saw nor ever heard of said publications, nor did they ever know of the existence of said orders until the latter part of the summer of 1919.

After said publications had been made and the time had expired within which such persons were required by said orders to intervene had expired, on, to wit, the 6th day of

September, 1917, a decree was rendered by said district court in said suit awarding a recovery to the said American National Insurance Company and to the said San Antonio Loan & Trust Company of the respective amounts of their debts against Closner, Sprague, the Valley Reservoir & Canal Company, and the Edinburg Town-Site Company, foreclosing the liens on said properties, and ordering said properties to be sold by a master commissioner for the purpose of paying off and satisfying the amounts of said judgments, and also of paying off and satisfying judgments for various amounts that had been rendered in favor of certain persons who had intervened. Said decree, by its terms, undertook to cancel and annul all liens, water rights, and easements on and in the properties ordered sold, and directed that the same should be sold free of such liens, claims, easements, and water rights.

By a subsequent order of the court the order of sale was changed and modified in a number of respects, but that part of the order directing the sale of the properties, including the irrigation system of the Edinburg Irrigation Company, free of any and all claims, liens, easements, and water rights, was not changed in any respect; but the new order directed the sale to be made to satisfy, first, the lien of the said receivers' certificates, then to pay off the said judgments, etc.

The properties were sold under this last order; and, by mesne conveyances, the Edinburg Irrigation Company became the owner of the said irrigation system.

The Edinburg Irrigation Company having refused to recognize the water rights of the appellees, and having refused to furnish any supply of water to appellees to irrigate their respective tracts of land, unless appellees would pay certain arrears of the flat rate provided for by the water contracts of appellees, which the Edinburg Irrigation Company claimed appellees owed to it as assignee under the Valley Reservoir & Canal Company, and would execute a new water contract, appellees brought this suit to compel the said Edinburg Irrigation Company to furnish them supplies of water from said irrigation system.

The appellants filed numerous exceptions, demurrers, pleas to the jurisdiction, and answers, also pleading res adjudicata; that whatever rights at any time appellees had the same had been foreclosed and sold out under the orders and decrees of the court in the receivership proceedings of American National Insurance Company et al. v. Valley Reservoir & Canal Company et al., had in the district court of Cameron county, acquired by sale and purchase thereunder by appellants.

The court also allowed Emory Lattanner, George R. Bevil, John Rooth, D. C. Ganaway, John Grenentz, J. P. Leonard, W. F. Myers, Joseph Dvorak, P. E. Berset, Albert R. Touvelle, Nelson Clegg, Emile Monney, H. E. Brown, A. L. Bowers, W. J. Petrie, John P. Garner, A. J. Allen, J. H. Beatty, Charles Vollmer, C. A. Biggerstaff, A. B. Watson, H. O. Berset, J. F. Link, H. B. Fouts, and Otto J. Berset to intervene herein, and set up their claims and defenses, joining in and adopting the appellant company's pleading. Their interest is based upon water rights granted to them; and alleging they and others similarly situated own, and hold, and are farming under irrigation water contracts approximately to water about 19,000 acres of land, issued between November 1, 1919, and the institution of this suit. That the canal does not own or control more water than sufficient to reasonably irrigate more than 18,000 acres, so that there are more water contracts outstanding than they can furnish water to irrigate the lands. To grant the injunction at the rates fixed and to require water furnished appellees would be a discrimination against interveners, both as to prices as well as to water. They also plead that the appellees have an adequate remedy at law for damages, and join fully in all the defenses pleaded and set up by appellant company.

It is inconceivable to us why an irrigation company, supposed to know its water supplying capacity, will put on the market and contract to sell, or permit contracts to be made requiring it to water, more land than it has capacity to irrigate properly, so that some of the water takers would suffer in case of shortage of water.

The same issues in this case and same defenses are made by the appellant company and interveners.

[1] We do not think a suit for damages is an adequate remedy in this case.

In respect to water rights all the parties are similarly situated, and seem now to be before the court, and so being there by proper process and by voluntary appearance, their respective rights may be fixed. The district court now has the power, when properly invoked from time to time, to make such orders and decrees necessary to preserve the rights of all the parties to the proceeding. The appellants and said interveners jointly appealed to this court from the said restraining order.

The first question to determine is the effect of the order of the court, made in the said receivership proceedings of the district court of Cameron county, notice of which was given by publication in the newspapers named, requiring all persons having claims against, or interest in, the estate so in the hands of the receivers to appear before said court on or before March 9, 1917, by virtue of an order made the 9th day of December, 1916, to set up all "liens, debts or claims of any character whatever against the

defendants in the suit, or be forever barred or concluded thereby." After causing such notices to be so published for said length of time, thereafter the property was sold, and appellant became the purchaser thereof. There having been no proper pleading in the case seeking any relief against appellees, or proper citation issued or served upon appellee, and they not having been properly brought before the court upon any pleading or personal service, to affect their interests, could such published notice be the basis of a judicial proceeding to preclude them from their estate, right, title, and interests therein, if any they had?

While it has been many times written by our courts, and text-writers as well, that a receivership proceeding is one in rem, to which the entire world is drawn, as in an attachment or sequestration proceeding, still, to do so, the bill of complaint upon which the receivership is granted must satisfactorily describe the impounded property and the rights of all persons to be affected thereby. It is not open to controversy that such notices are binding upon parties having claims against the property—the assets and funds of the receivership in the hands of the court for final settlement and distribution of the same to the ultimate disposal of the entire estate—and pass good, unincumbered title to the purchaser, but that does not mean the title and estate of a person not a party thereto.

[2] The right secured to appellee to water is in the nature of real estate; it was a covenant that ran with the land. The receivership procedings were not instituted for the purpose of depriving appellees of their said right, it was not so set out in the pleadings or contemplated, for they were not called upon to come in by any legal process to meet that issue. Their property right was not involved in this suit. It was not the purpose of the proceedings instituted to secure the receivership to affect their rights, and appellees' property was never brought to the custody of the court for adjudication and determination, and not, therefore, affected by such notice. In Ry. v. Johnson, 76 Tex. 432, 13 S. W. 466, 18 Am. St. Rep. 60, Judge Stayton, speaking for the court, said:

"It is contended, however, that that court had power to require all persons who had claims with which the property once in custody of the court was charged to present their claims by intervention for adjudication in that court.

"Whence that power we know not. Courts may make erroneous rulings which will bind parties to a litigation in which they were made, but they have no power to make laws which will bind strangers to the litigation.

"Had the receivership not been closed such an order, in so far as it might be sought to bind appellee through it, would be inoperative and in conflict with the act of Congress passed March 3, 1887, which permits persons having claims against receivers to sue upon and establish them in any court having jurisdiction, without leave previously given by the court appointing the receiver. The order relied upon, if given effect, would annul the act of Congress.

"It is contended further that not only was it necessary for appellee to establish his claim through intervention, but that such intervention should have been made within the time prescribed by the order, or the claim be forever barred and no longer remain a charge on the property.

"It is generally understood that in our form of government none other than that to which the power to make laws is given have such power. Within what time a claim shall be established, or action brought to establish it, must be determined by the lawmaking power, except in those cases in which from long lapse of time courts of equity have felt authorized to refuse to enforce them." Ry. v. Whitaker, 68 Tex. 636, 5 S. W. 448; Ry. v. Gay, 86 Tex. 571, 26 S. W. 599, 25 L. R. A. 52.

[3] The court is without jurisdiction to render a judgment against one party in favor of another, without a pleading filed as a basis in favor of such party with process duly served upon him. Such a judgment is a nullity. Dunlap v. Southerlin, 63 Tex. 38; Waldron v. Harvey, 54 W. Va. 608, 46 S. E. 603, 102 Am. St. Rep. 959; Reynolds v. Stockton, 140 U. S. 254, 11 Sup. Ct. 773, 35 L. Ed. 464; 23 Cyc. 684.

[4] The appellees' easements and water rights, being a valuable property right, could not be taken and destroyed without the appellees having their day in court; if the decree had that effect, based solely upon the notice given, stated, it would be tantamount to the state through its judicial department taking property without due process of law, and in violation of law, and in violation of both federal and state Constitutions. We are not disposed to give to the notice and decree of sale the effect claimed for it by appellants. Nor do we believe such was intended by the proceedings of the district court of Cameron county.

In equity cases such a rule is necessary to enable the court to wind up the receivership estate, bring it to a close, and pass good title to the purchaser of administered property— such only as is brought to the custody of the court. This doctrine cannot be extended further than that. We do not intend to hold in such a proceeding that the court could not have extended its jurisdiction by proper pleading so as to bring before it for adjudication all questions involving easements and water rights of appellees, either to reform, if harsh and impossible of performance, or annul, but this was not undertaken to be done. We are therefore of the opinion that appellees' water rights, if any, were not affected by said receivership proceedings and sale thereunder, or they were not assets belonging

to said receivership. And for the consideration of the other questions involved the receivership sale is set aside.

[5] Water rights originally granted to appellees are easements carved out of the fee simple of said irrigation system attached to the respective tracts of appellees' lands, and appurtenants thereto, and a part thereof from the date of the execution and delivery of the deeds conveying said water rights, and are as covenants running with the land. Article 5002e of Vernon's Sayles' Statutes; South Tule, etc., Co. v. King, 144 Cal. 454, 77 Pac. 1032; Travelers, etc., Co. v. Childs, 25 Colo. 360, 54 Pac. 1020; Ada, etc., Co. v. Farmers, 5 Idaho, 793, 51 Pac. 990, 40 L. R. A. 485; 2 Kinney on Irrigation, p. 1312.

[6] Therefore, appellants' purchase of said property, through the said receivership proceedings, could acquire no higher title than the receiver acquired, and purchased under such proceedings were charged with all its obligations and covenants to furnish water. Vernon's Sayles' Statutes, art. 5002e; Bennett v. Booth, 70 W. Va. 264, 73 S. E. 909, 39 L. R. A. (N. S.) 618; Houston v. Zahn, 44 Or. 610, 76 Pac. 641, 65 L. R. A. at page 804; Stanislaus Co. v. Bachman, 152 Cal. 716, 93 Pac. 858, 15 L. R. A. (N. S.) 359; 9 Ruling Case Law, p. 804, § 61; 3 Kinney on Irrigation, p. 2501.

[7] The appellants and those under whom they hold are quasi public service corporations, and as such are required to perform that duty to the public when paid for such service.

The court in his order granting the injunction attached the following proviso to be complied with by appellee Paschen as a condition precedent to obtaining the relief granted:

"And provided that for rates for such water the said Paschen shall pay to the defendant, Edinburg Irrigation Company, the sum of four dollars (4) per acre for the year 1920, for the above-described eighty (80) acres of land, or the sum of three hundred twenty dollars ($320) cash in advance at the time when the first application for water by the said Paschen is made by him, in keeping with the present prevailing prices in force as to other water users from said Edinburg Irrigation Company's canal system, and also upon the further payment by the said Paschen to the said defendant of the sum of two and 50/100 dollars ($2.50) per acre per irrigation, to be paid by the said Paschen cash in advance with each application he may make for irrigation for the amount of acreage therein applied to be irrigated; and provided that water shall be furnished upon, and subject to, and the said Paschen shall comply with, all the reasonable rules and regulations prescribed by the defendant as to the manner of supplying said water and of receiving the same; and provided further that, in the event of scarcity of defendant's supply of water, as provided by statute, the said Paschen shall be entitled to receive and be furnished with his pro rata of such supply with all other holders of water contracts from said defendant company, as provided by statute in respect to pro rating of water in event of shortage."

[8] A similar provision was inserted with respect to each plaintiff to whom relief was granted. It is contended that the court had no authority to grant an injunction upon such terms; that thereby it invaded the rate-making power of the Legislature; and that appellants, as a prerequisite to obtaining relief, would have to go before the board of water engineers and have rates fixed. We find no merit in the contention. To impose such a condition would be to practically deny equitable relief. The appellant having by its contracts with others fixed rates for land similarly situated, the court could require it to comply with its obligations to appellees upon the same terms as to rates.

[9] It is no defense to say it cannot furnish to appellees water, they having a prior contractual right; because it has sold, and continues to sell, more land than it can reasonably put water upon is not the fault of the water taker, but of the water furnisher.

It was also demanded of appellee the payment of a disputed bill for water claimed to have been previously supplied; and also a demand that appellee execute a certain written contract. We do not believe those requirements are proper under the circumstances, since he is wiling now to pay the water rates fixed, so we will not disturb the ruling in that particular of the trial judge.

The judgment of the court is affirmed.