## LOVETT v. PASCHEN. (No. 6684.)

(Court of Civil Appeals of Texas. San Antonio. March 8, 1922. Rehearing Denied May 24, 1922.)

**1. Vendor and purchaser ⬥➡3(4)—Vendor not liable for fraudulent representations made in sale by his purchaser.**

Where a person contracted with a landowner to sell to him such lands from a tract as he should call upon the landowner to convey to him, and agreed to advertise and promote sales which could be made to whomsoever he chose at whatever prices and upon whatever terms he chose to give, the agreement was an option contract for the purchase of land, and on knowledge of such relation by purchaser of the lands from the person so contracting the landowner cannot be held responsible for fraudulent representation made in the sale.

**2. Vendor and purchaser ⬥➡307—Breach of covenant to supply water for irrigation of land bought held not a failure of consideration of the purchase-money notes.**

In a sale of land where a vendor contracted that an irrigation system would be extended to the land, and that an irrigation company would execute with the purchaser a permanent water rights contract to convey to him the permanent right to demand and receive water in sufficient quantities to properly irrigate the land when cultivated, in a suit by the vendor against a vendee of the purchaser on notes given by the purchaser and assumed by the purchaser's vendee, failure to supply a sufficient amount of water for irrigating crops does not amount to a failure of consideration, but was only a breach of covenant.

Cobbs, J., dissenting.

Appeal from District Court, Cameron County; W. B. Hopkins, Judge.

Action by T. F. Lovett against W. E. Paschen. From judgment for defendant, plaintiff appeals. Reversed and rendered in part, and affirmed in part.

Spears & Montgomery, of San Benito, for appellant.

J. T. Canales, of Brownsville, and Don A. Bliss, of San Antonio, for appellee.

SMITH, J. At the inception of the transactions out of which this litigation arose, John Closner, Wm. F. Sprague, the Valley Reservoir & Canal Company, and the Edinburg (Chapin) Town-Site Company owned separate tracts which together comprised a large body of land in Hidalgo county, including the tracts here involved. The Valley Reservoir & Canal Company was a public service irrigation corporation purporting to operate adjacent to and upon the land mentioned. The land, in its raw state, was suitable only for pasturage purposes, had but little selling value, and was not readily salable. If equipped with appropriate facilities and supplied with sufficient water to insure proper irrigation, however, the land was deemed good for agricultural purposes, and would have a market value of approximately $175 an acre. The owners conceived a plan of putting this land under irrigation, and of disposing of it in small tracts as irrigated land, to which end they entered into a comprehensive contract with Ralph R. Langley by which the latter was given the exclusive right, for a period of two years, to purchase and sell a large and specifically described portion of the land, which was to be conveyed to him from time to time, and tract by tract, as he procured contracts to resell them. The owners further obligated themselves to convey to him, along with the title to each tract, certain permanent water rights from the Valley Reservoir & Canal Company. As a result of this contract, Langley, through agents of the Standard Land Company, a selling corporation, procured W. E. Paschen, appellee herein, as a purchaser of 120 acres of the land, and, as provided in said contract, the owners conveyed the land to Langley, who in turn conveyed it to Paschen. In this transaction, and as provided in the contract, Langley executed and delivered to the owners (in this instance Sprague and Closner) his promissory notes secured by the vendor's lien on the 120 acres, and Paschen assumed the payment of these notes as part of the consideration passing from him to Langley. Subsequently these notes got into the hands of T. F. Lovett, appellant herein, who, upon Paschen's default, brought this suit to enforce their payment and to foreclose the lien upon the lands. Paschen defended, setting up failure of consideration due to fraudulent representations of alleged agents of Closner and his associates, charging Lovett with notice of the fraud, and alleging that when the latter obtained the notes the first one was past due, rendering all of them subject to every defense available to Paschen as against the original payees. A jury found for Paschen upon all the issues submitted to them, and judgment was rendered on these findings, canceling the notes and lien, and removing cloud from Paschen's title. The suit was originally brought by Lovett against Langley as the

maker and Sprague and Closner as indorsers of the notes, against Paschen because of his assumption to pay the notes, and against the Valley Reservoir & Canal Company and others as claiming some interest in the land. In his cross-action Paschen sought to recover against all of the parties above mentioned. Upon the trial, however, all these parties were dismissed with the consent of both Lovett and Paschen, between whom alone the suit was tried.

[1] The whole case turns, primarily, upon the question of whether or not, by his contract and dealings with them, Langley was the agent of the owners in his sale of the land to Paschen, thereby rendering them liable to the latter on account of the alleged fraudulent representations which induced him to purchase the land and execute the notes he now seeks to have canceled. The determination of this question involves, in fact depends entirely upon, the construction of the contract between the owners, Closner and Sprague, on the one hand, and Langley, on the other. This contract covers 12 pages in the transcript, and therefore, of course, cannot be set out in full here. We think it will be sufficient for the purpose of the question about to be discussed to show that in this contract, "for the sale and purchase" of the lands, it was provided that, "in consideration of each of the mutual terms, conditions, and covenants hereinafter contained," the owners "give and grant to [Langley] for the term of two years the exclusive right and privilege of selling and of purchasing all of the lands" therein described; that Langley "binds himself to use his best efforts to sell all of said lands"; that the price to be paid by Langley to the owners shall be $80 an acre, to be paid $16 an acre cash, and the balance to be paid in four annual installments, to be evidenced by Langley's vendor's lien notes payable to the owners, who shall, upon receiving the cash payments and notes upon any particular tract, execute their deed conveying such tract to Langley; that in the resale of the lands Langley may, if he desires, take from the purchasers property in lieu of cash, in which events he shall have six months in which to make his cash payment to the owners, and that until he does make this cash payment the owners shall not be required to convey to him; that in selling the lands Langley shall advertise and diligently promote such sales, "and to that end he shall use the organization of the Standard Land Company and such other organizations as he may desire, to the end that said lands shall be disposed of promptly within the time and according to the terms herein expressed"; that the owners shall prepare abstract of title to all the lands and deliver the same to Langley within 20 days, together with the opinion of a reputable attorney as to the sufficiency of the title as shown in

such abstracts; that there was an existing incumbrance upon the land, but that the owners would procure a release of such incumbrances from any tract "when sold" as soon as three-fifths of the purchase money thereon has been paid to them; that the owners will extend the canal of the Canal & Reservoir Company to the lands 'involved, and that, "when sold," said lands are to "to be irrigated with water received from the Valley Reservoir & Canal Company, in accordance with the terms and conditions of contracts of said canal company existing between said canal company and other lands being watered by the same," to which end the owners agreed to install additional and specifically described irrigation facilities; that, if Langley shall "fail to sell the quantity of lands" as provided, the owners, at their option, may forfeit the contract, except as to sales already made by Langley, which he was required to settle and close up within 90 days after such forfeiture; that the covenants and agreements above set out "shall be binding upon and extend to the respective parties herein and their heirs, executors, and assigns," but that Langley should not assign this contract except upon the written consent of the owners. There was some oral testimony regarding this contract and its purposes and effect, but it was not of such nature as to vary the expressed agreement in any of its material aspects.

The concrete question presented is whether this was a contract for the sale of the lands to Langley, thus creating between the owners and him the relation of vendor and purchaser, or a contract for the sale of the lands by the owners through Langley to others, thus establishing between them the relation of principal and agent, respectively; these relations being inconsistent, each with the other. The real test by which the relations of the parties must be determined is found in their obligations, each to the other, according to the provisions of the contract. What are these obligations? They are, after all, plain and easily ascertained, and may be readily stated in a few words. And, first, what are the owners' obligations to Langley? To sell and convey to him the specifically described lands, or any tracts thereof he may select, at specified prices and upon stipulated terms; to furnish him within a stipulated time abstracts of title of all the lands, together with the opinion of a reputable attorney as to the sufficiency of the title as thus shown; to procure release of a prior mortgage upon any tract sold upon payment to them of three-fifths of the purchase price, and to convey to him the permanent water rights upon the lands as and when the latter are conveyed to him by them, and to extend an irrigation system to the lands in a stipulated time and manner. These are, in general terms, the obligation of the owners

to Langley. These obligations went no further. They were limited in their operation to Langley and his successors in title, as such. The owners did not expressly or impliedly authorize Langley to make any promise or statement to or contract with third persons that would in any manner bind them, and no such authority could possibly be inferred from the language, purposes or provisions of the contract. And, second, what were Langley's obligations to the owners, as fixed in the contract? To pay them for such of the lands as he should call upon them to convey to him, at the price and upon the terms stipulated in the contract, and, as his purchases from the owners were dependent upon his resale thereof to others, he was further obligated to advertise and diligently promote such resales, and promptly report them when contracted for by him. Further than this he was not obligated to the owners. He had the right to make the resales to whomsoever he chose, at whatever prices and upon whatever terms he pleased to make and give, and was not required to make any accounting thereof to the owners, nor had he the right to demand of them any commission upon the resales. He was simply required to pay the owners the price and upon the terms stipulated in the contract, and there his responsibility to them fully terminated. For these obligations they looked to him alone. He met them in this case, and in pursuance of the provisions of the contract they conveyed the land involved to him, and he in turn sold and conveyed it to Paschen at a greatly increased price, retaining the excess over the price he paid them. Nothing can be made out of these facts but an option contract for the purchase of land, which automatically excludes the relation of principal and agent as between the parties thereto. Closner & Sprague v. Acker (Tex. Civ. App.) 200 S. W. 421; Reeves v. McCracken, 103 Tex. 416, 128 S. W. 895; Robinson v. Easton, 93 Cal. 80, 28 Pac 796, 27 Am. St. Rep. 167. It should be added in this connection that at the time he purchased the land and executed the notes Paschen had full notice of the character of the relations between Langley and Sprague, Closner and the Reservoir & Canal Company. We have very carefully considered this contract, and are unable to distinguish it from the one involved in Closner & Sprague v. Acker, supra, decided by this court. That contract was between Closner & Sprague as vendors and one Ryan as vendee; while the contract here involved was between Closner & Sprague as vendors and Langley as vendee. The specific lands in each case were in the same body of lands, and the defenses and general facts quite similar. While it is true that the contract is not fully set out in the opinion therein, we have examined it in the record in that case, and, as we have said, it appears from it and the oral testimony relating thereto that it is similar in all essentials to the contract now before us. It was held in that case that the contract was simply an option to sell the land to Ryan, and created between the parties the relation of vendor and purchaser, rather than of principal and agent, and that accordingly the fraudulent representations of Ryan and his agents could not be charged to or binding upon Closner & Sprague. We think that decision is sound, and accordingly hold that the record here fails to support the finding of the jury; that Langley and his agents were the agents of Closner & Sprague; hence they could not be bound by the representations which the jury found were fraudulently made to Paschen by Langley's agents. This conclusion eliminates from the case any question of fraud.

[2] But one other question material to this decision remains to be discussed. In addition to the allegations of fraudulent representations noticed above, and the plea of failure of consideration based thereon, Paschen set out the obligations imposed upon Closner and associates in their contract with Langley whereby they agreed: First, to extend the Valley Reservoir & Canal Company's system to the lands involved; and, second, that the latter company would execute with Langley one of its usual permanent water rights contracts conveying to him the permanent right to "demand and receive" water from the company, under conditions stipulated in the contract, in sufficient quantities to properly irrigate the land when cultivated; that the provisions of the first contract inured to the benefit of Langley's assigns, and that the second contract became appurtenant to the land, and Paschen succeeded to all of Langley's rights under both contracts; that Langley's grantors, Closner, Sprague, and the irrigation company, had failed to properly extend the facilities for irrigating the land, as provided in their contract with Langley, and the irrigation company had failed to supply water under its contract with Langley, resulting in damages to him in 1914 in the sum of $2,800, and unspecified damages in the years following; and that his land had never received sufficient water to properly irrigate it. Lovett pleaded the statutes of limitation against these allegations of damages, and upon the trial of the cause Paschen acquiesced in the dismissal of Closner, Sprague, and the Reservoir & Canal Company from the suit, expressly disclaimed that he was seeking to recover of them, and in open court announced that he was "not seeking to recover any damages to crops for any failure to furnish water alleged in his cross-action, but was seeking to recover on his cross-action for failure of consideration set up in said cross-action, and to remove cloud from title." We construe this admis-

sion of Paschen to mean that he would no longer complain of the alleged failure of Closner, Sprague, and the irrigation company, individually or collectively, to supply water with which to irrigate his land, except as such failure served to prove the falsity of Langley's representations that the land at the time of the sale was immediately subject to full irrigation; that by these admissions he abandoned his cross-action except in so far as it would serve to show failure of consideration by the fraud of Langley. The trial court and the parties seem to have so construed these admissions, since no issue was submitted or requested with reference to the failure to furnish water, and the facilities for distribution thereof. All the issues were confined to the question of fraudulent representations, which is now out of the case. But appellee now urges in the present alternative status of the case that, in the absence of any finding thereon, we must assume in support of the judgment that the trial court found that Closner and Sprague and the Reservoir & Canal Company defaulted in the covenants in the Langley contract and in the water contract between the Reservoir & Canal Company and Langley, providing for the irrigation of the land, and a consequent failure of consideration for the execution of the notes, and that on that ground the judgment canceling the notes should be affirmed. But we do not understand the law to warrant such disposition of the case. Assuming that appellee's allegations warrant the application of this remedy, which is quite doubtful, and that by the admission recited in the judgment he did not expressly waive any right he may have had to complain of this default as such, we do not understand the remedy of failure of consideration to have been available to appellee because of the alleged breach of the covenant to irrigate the land. He has presented, not a case of failure of consideration, but a breach of a covenant, which is a very different thing. He contracted for specifically described land, and for a permanent water rights contract from the Reservoir & Canal Company. He received the identical land purchased, as well as the water contract, which is still in full force and effect, and accordingly there was no failure of consideration. If the irrigation company and its assigns have imperfectly discharged their obligations to him under that contract, he may go into court and recover damages for such breach and compel performance in the future, since his rights thereunder are appurtenant to, and run with, his land. Irrigation Co. v. Paschen (Tex. Civ. App.) 223 S. W. 329; Id. (Tex. Com. App.) 235 S. W. 1088.

Appellee's petition in the court below was good as against a general demurrer, and accordingly appellant's first assignment of er-

ror will be overruled. The second assignment, embracing the matters first discussed herein, is sustained. In the third assignment complaint is made of the refusal of the court to give a certain special charge requested by appellant, presenting a question no longer material, and the assignment will on that account be overruled. The fourth and fifth assignments assert the insufficiency of the testimony to support the verdict of the jury in certain phases of the case. We think the evidence in those .respects, however, was sufficient to support the findings, and those assignments will be overruled.

The conclusions we have reached require that the judgment in favor of appellee against appellant Lovett canceling the notes sued on, and removing cloud on appellee's title by reason of those notes, be reversed, and that judgment be here rendered that appellant recover of appellee the principal, interest, and attorney's fees provided for in those notes, and for foreclosure of the lien on the land involved to secure the payment of the money judgment, and for his costs. In all other respects the judgment will be affirmed.

Affirmed in part; in part reversed and rendered.

COBBS, J. (dissenting). I do not concur with the disposition made of this case by the majority of the court, because I do not think the opinion gives a correct analysis of the contract. I do not think the opinion has properly construed the pleadings on the subject of the failure of Closner & Sprague to furnish water, nor as to the effect given as to their dismissal from the suit as in any way constituting a waiver of the defense, and that the breach as a covenant running with the land cannot be asserted as a failure of consideration, in whole or in part, against the purchase money of the land, agreed to be irrigated. Pope v. Hays, 19 Tex. 375; Gutta Percha v. City of Cleburne, 102 Tex. 36, 112 S. W. 1047. The abandonment of the claim to recover a judgment for damages against Closner & Sprague was in no sense an abandonment of the plea of failure of consideration. He had both remedies; could not enforce both. While a recovery of damages for a breach might not have been full and adequate, he would not be permitted to take his damages that perhaps would fully compensate, and still cancel the note at the same time, nor vice versa. In other words, a failure of consideration is invoked for defensive purposes; whereas the plea for damages is offensive.

The appellee was not buying nonirrigable land. I am not considering here the court's ruling in instructing a verdict for Lovett or appellee's cross-assignment thereon, nor the assignment that the testimony did not support the verdict of the jury on the ques-

tion raised of agency. This should have been discussed in view of the opinion. Holland v. Nimitz (Tex. Sup.) 239 S. W. 185. Again, I do not think the contract in the Closner & Sprague v. Acker Case so generously approved in the opinion of the majority of the court is identical with the one here; besides, the judgment in that case was reversed.

The rule now pronounced by the Commission of Appeals, and approved so generously by Chief Justice Phillips in Wisdom v. C. R. I. Ry. Co., 231 S. W. 345, and lately in Turley v. Campbell, 239 S. W. 603, just decided, is that, if the opinion or record shows any testimony supporting the judgment of the trial court, the Court of Civil Appeals cannot reverse and render, but must remand. If the court says there is no testimony supporting it, then it became a question for the Supreme Court, as a matter of law, to say whether under such state of the record the Court of Civil Appeals correctly reversed and rendered.

Unquestionably in the majority opinion it has not been contended or said that there was no evidence to support the judgment. Looking at the opinion itself, this case should either be affirmed or reversed and remanded.