MUDGE et al. v. HUGHES et al. (No. 6241.)

(Court of Civil Appeals of Texas. San Antonio. May 22, 1919.)

1. COURTS ⬳478 — PROPERTY IN HANDS OF RECEIVER — ENFORCEMENT OF JUDGMENT — STATUTE.

Rev. St. 1911, art. 2146, authorizing suits against receivers without first obtaining leave of the court appointing such receivers, does not, in view of article 2137, confer upon one court the right to enforce a judgment out of property in the hands of receiver of another court, or to interfere with the custody and control of such property.

2. PROPERTY ⬳4 — WATERS AND WATER COURSES ⬳249 — IRRIGATION—NATURE OF WATER—REAL ESTATE.

Water in canals for irrigation purposes is real estate, and landowner's right to the use of a portion thereof is a servitude upon such real estate.

3. WATERS AND WATER COURSES ⬳232—IRRIGATION COMPANY — RECEIVER—WATER IN CANALS.

When court, appointing receiver for irrigation company, took into its custody the property

of the company, it took the water flowing into the canals as a part thereof.

4. COURTS ⬳478 — CONFLICTING JURISDICTION—POSSESSION OF PROPERTY—INTERFERENCE.

One court has no right to interfere with the possession by another court of property for which it has appointed a receiver.

5. RECEIVERS ⬳116 — CONTRACTS — ANNULMENT.

Contracts made by receivers under authority given by the court are in a substantial sense the contracts of the court, and cannot be annulled at the pleasure of the court.

6. COURTS ⬳478 — CONFLICTING JURISDICTION—MANAGEMENT OF CORPORATION.

In view of Rev. St. 1911, arts. 2132 and 2133, the district court of one county has no right to interfere with the management and control of the corporation being administered by a receiver appointed by district court of another county.

7. COURTS ⬳478 — CONFLICTING JURISDICTION—ACTION AGAINST RECEIVERS.

District court of one county has no jurisdiction of suit and to compel receiver of irrigation company to supply water upon terms other than those imposed by order of district court of another county appointing receiver, and to have such terms declared unreasonable, and to enjoin enforcement thereof, since an order granting such relief would constitute an interference with the possession, control, and management of the receivers appointed by another court.

Appeal from District Court, Bexar County; S. G. Tayloe, Judge.

Suit by John F. Mudge and others against A. A. Hughes and others. Judgment of dismissal, and plaintiffs appeal. Affirmed.

Don A. Bliss, of San Antonio, for appellants.

Samuel Spears, of San Benito, A. K. Black, of Austin, and A. L. Montgomery, of San Benito, for appellees.

MOURSUND, J. Appellants filed suit in the district court of Bexar county in and for the Forty-Fifth judicial district of Texas against appellees, A. A. Hughes, who resides in said Bexar county, and E. F. Rawson, who resides in Cameron county, Tex., alleging, in substance, as follows: That appellants respectively own certain tracts of land, describing the same, situated in Hidalgo county, Tex.; that said tracts of land are situated within the semi-arid district of Texas, where the natural rainfall is insufficient to produce crops; that they owned, and still own, water rights appurtenant to their respective tracts of land entitling them to be supplied with water from an irrigation plant owned by the Valley Reservoir & Canal Company, a cor-

poration duly incorporated under the laws of Texas, as a public service irrigation corporation, which corporation had duly conveyed to appellants said water rights; that said conveyances embodied contracts between appellants and the·said Valley Reservoir & Canal Company running with the land, the stipulations of said contracts setting forth the fixed charges and other rates to be charged for supplying water from said irrigation plant; that afterwards receivers had been appointed of the property of the Valley Reservoir & Canal Company, including said irrigation system, by the district court of Cameron county, Tex., and that the said appellees had been appointed said receivers; that appellees were unlawfully making certain demands upon appellants, and requiring appellants to comply with said unlawful demands as conditions precedent to allowing appellants to enjoy their said easements during the year 1919; that each and all of said demands were unreasonable; that appellees were unlawfully withholding from appellants the enjoyment of their said easements, to wit, their said water rights, because of the refusal of appellants to comply with said unlawful demands.

A'mong the unlawful demands, as alleged by appellants, was one requiring them to pay to appellees the amounts of the fixed charges on each and every acre of their lands that appellees' claimed had accrued prior to the time of the appointment of any receivers by the said district court, being the fixed charges provided by their said contracts with the said Valley Reservoir & Canal Company for the years 1914, 1915, and 1916, which said fixed charges appellants alleged they did not owe, and were in dispute between them and the said Valley Reservoir & Canal Company prior to the appointment of any receivers of the property of the said Valley Reservoir & Canal Company, and which were in litigation as to all of the appellants, except appellant Paschen, in the district court of Hidalgo county, Tex., and the district courts of said Bexar county prior to any appointment of receivers of the property of the said Valley Reservoir & Canal Company.

Another was a demand that appellants pay to appellees the sum of $5 per acre on each and every acre of their said lands for the purpose of making permanent betterments in the said irrigation system, ·and to pay one-half of the salaries of appellees as receivers of the property of· the said Valley Reservoir & Canal Company during the year 1919, and this over and above the charges made for supplying water.

Appellants further alleged that the appellees, defendants, were also discriminating against appellants in favor of others who may have complied with said demands by a certain date by undertaking not to allow appellants the enjoyment of their said easements in the event that the supply of water of said irrigation system should be exhausted by those who complied with said demands by said date, even though appellants should comply with said demands after said date, that is to say, appellees were giving a preference to those who should comply with said demands by said date.

Appellants further alleged that all of said demands as well as the said preference were unreasonable and unlawful.

Appellants alleged that the time was right at hand when the enjoyment of their said easements was necessary to enable them to make crops on their said lands during the year 1919; and unless they were allowed at once the enjoyment of their water rights they would be deprived of the beneficial enjoyment of their lands during the year 1919, whereby they would suffer great and irreparable losses, for which they had no adequate remedy at law.

Appellants offered to pay to appellees in advance the fixed charges stipulated in their water contracts with the said Valley Reservoir & Canal Company, to wit, $4 per acre on each and every acre of land owned by all the appellants other than appellant Paschen in accordance with their said water contracts and $3 an acre on each and every acre owned by appellant Paschen in accordance with his said contract; and they offered, further, to pay to appellees in advance the said charge of $5 per acre demanded by appellees for the purpose of making permanent betterments in and on said irrigation system, and to pay on the salaries of said receivers in case the court should so require, and to comply with any and all reasonable rules and regulations that appellees had prescribed or might prescribe as to supplying them with water to irrigate their said lands from said irrigation system, and they offered to do any and all things they ought in equity and good conscience to do.

Appellants prayed for the issuance of a preliminary injunction restraining and prohibiting appellees from withholding from them the enjoyment of their said easements until appellants should comply with said unreasonable and unlawful demands during the pendency of the suit; and they prayed that, on final hearing, the court adjudicate each and all of said demands of appellees to be unreasonable and unlawful, and that a peremptory writ of mandamus issue compelling appellees to permit appellants to enjoy their said easements, to wit, their said water rights, in accordance with their said contracts, and that the appellees be perpetually enjoined and prohibited from requiring appellants to comply with said unreasonable and unlawful demands as a condition preced-

ent to appellants' being allowed to enjoy their said water rights. Appellants also pray for general relief.

Appellees first interposed a plea to the jurisdiction of the court to hear and determine the controversy between appellants and appellees in substance as follows: That they had been duly appointed by the district court of Cameron county receivers of the property of the Valley Reservoir & Canal Company, including the irrigation system of said corporation, in a suit numbered 3073 on the docket of said court, wherein the American National Insurance Company and the San Antonio Loan & Trust Company were plaintiffs, and the Valley Reservoir & Canal Company, John Closner, W. F. Sprague, and others were defendants, entitled American National Insurance Company et al. v. Valley Reservoir & Canal Company et al., and were duly authorized by the order of said district court to continue the operation of said irrigation system, but under orders of the court; that they were operating and managing said irrigating system under orders of said court, and that they were making said demands alleged by appellants under an express order of said court, a copy of which order they attached to their said plea to the jurisdiction and made the said copy a part of said plea.

The paragraphs of said order which bear directly upon the matters complained of by appellants read as follows:

"(V) At the time of making such application the applicant shall pay to the receivers the sum of $5 per acre on every acre in tract of land mentioned in his application, whether all of said land is to be irrigated or not, to be known as a fixed or maintenance charge; and, in addition to such fixed or maintenance charge, the applicant shall also pay to the receivers all charges then owing by him theretofore accrued under the previous orders of the court, and any irrigation contract which accrued thereunder up to July 7, 1917, but not thereafter accrued under the previous orders of the court and any irrigation contract which accrued thereunder up to July 7, 1917, but not thereafter under any such contract.

"(VI) When the provisions of the last two preceding paragraphs have been complied with, as to any land, such land shall be held to have been qualified for irrigation hereunder.

"(VII) All lands which have not been qualified for irrigation on or before December 31, 1918, as above provided, may be qualified thereafter and up to October 31, 1919, for irrigation during the period ending October 31, 1919, by the owner or his agent making the application and payments above provided for, and thereupon the owner, agent, or tenant of said land shall be entitled to receive water for the irrigation thereof, during the period ending October 31, 1919, upon complying with the other terms and provisions hereof."

"(IX) The rights of the owners to receive water for the irrigation of land, which shall be qualified after December 31, 1918, shall be subordinate to the rights of owners of land qualified on or before said date, and they shall have priority in right among themselves in the order of their applications made subsequent to December 31, 1918.

"(X) No application for water service shall be received if at the time of application the capacity of the irrigation system, or what part hereof through which the land is to be irrigated, is sufficient to afford adequate service to the land already covered by applications, and in the event of shortage of water for the irrigation of land on applications filed after December 31, 1918, water shall not be prorated among all consumers, but shall be denied to lands qualified under such delayed applications in the inverse order in which such applications were filed with the receivers.

"(XI) Each time water is desired for the irrigation of lands the owner or his agent will make application to the receivers stating the number of acres to be irrigated, the crop or crops growing or to be planted thereon, and the number of acres in each crop, and at the time of making such application shall pay to the receivers $3 per acre for every acre to be irrigated, to be known as a service or water charge, and which will be received as the rate or charge for the use of a head of water at the rate or on the basis of two hours per acre for the irrigation of all the land included in such application for water. If a longer use of the water than an average of two hours per acre is employed or taken by any applicant, he shall pay to the receivers for such excess time $1.50 per hour or fraction thereof, except when, in the judgment of the receivers, such delay is due to improper or defective construction of the canal system under their control, or to insufficient headwater in the lateral from which the land is being watered. The charge for the use of water over time, as above provided, shall be known as an excess service on water charge."

"(XIII) No water shall be furnished to any applicant for irrigation unless at the time of making the application therefor he shall pay the service or water charge above provided, and also any and all charges owing by him under the terms and provisions hereof, and any previous order of this court, and any irrigation contract which accrued thereunder, up to July 7, 1917, but not thereafter under any such contract."

Appellees also filed a plea of privilege and a lengthy answer. Appellants filed exceptions to the plea to the jurisdiction and a long supplemental petition. We deem it unnecessary to state the contents of these pleadings, believing that the statement of the substance of the petition and the plea to the jurisdiction, copied largely from appellants' brief, will be sufficient basis for the discussion of the issues presented. The plea to the jurisdiction was sustained and the cause dismissed, after hearing the evidence. The court filed findings of facts 17 pages in length. These are not objected to and are adopted by us, but we deem it unnecessary to copy them in our opinion. The substance of the most important findings will be stated.

The plaintiffs owned the land, with the water rights appurtenant thereto, as alleged in

their petition. The books in the hands of the receivers showed unpaid water charges and rentals as having accrued up to July 7, 1917, under the water contracts set up in plaintiffs' pleadings, against each of plaintiffs except Doll, and the receivers, as a condition precedent to furnishing water to plaintiffs except Doll, demanded payment of all water charges and rentals accruing under any irrigation contract up to July 7; 1917, and also the fixed charge of $5 per acre provided for in said order of the court. No demand was made upon plaintiff Doll for the payment of contract water rents and charges. None of the plaintiffs have ever been parties to the receivership proceedings except Mudge, who filed a motion in 1918, for the purpose of procuring a cancellation of water charges for the year 1917. The intervention was disposed of by granting a cancellation as to charges with respect to 40 acres and refusing it as to charges for 80 acres. Notwithstanding such cancellation the receivers demanded of Mudge the payment of said charges as to said 40 acres as a condition precedent to furnishing him water for any of his lands. As a matter of fact the charges for 1917 upon the 80 acres had been paid in order to procure water, and for that reason the court declined to cancel the charges, and, there being no pleadings for the recovery thereof, the court declined to order the repayment of the sum. Mudge thereupon brought suit in the district court of Cameron county to recover such sum. Prior to the institution of the suit in which the receivership was granted, suits had been instituted by plaintiffs, except Paschen, in Bexar county and Hidalgo county for damages for failure to furnish water for the years 1914, 1915, and 1916, in which suits it was claimed by plaintiffs that they did not owe the charges for said year because of a failure of consideration, and also on the ground that any claim therefor was more than offset by their counterclaims for damages. A part of the lands of plaintiffs Doll and McCoy have been qualified to receive water under said order of November 21, 1918. In the order appointing the receivers the court directed them to take charge of all property of defendants in said suit and all choses in action; to receive rents and collect demands; to take possession of, keep, maintain, and operate all irrigation plants and properties of the defendants, under the direction of the court or the judge thereof. The receivers have never operated the irrigation system under the contracts pleaded by plaintiffs, but, on the contrary, under the orders of the court, the last of which was that of November 21, 1918, certain provisions of which have hereinbefore been copied.

The court's first conclusion of law is as follows:

"I conclude that since the defendants are in possession of said canal and reservoir properties, operating same under the express orders of the district court of Cameron county, made in cause No. 3073 as shown by the minutes of said court, that said district court of Cameron county has acquired exclusive jurisdiction of the matters in controversy herein, wherein relief is sought by mandamus and by injunction against the defendants, and that this cause should be dismissed from this court for such reason."

The correctness of this conclusion is challenged by appropriate assignments of error.

"All the authorities sustain the proposition that when a court of equity acquires jurisdiction of a cause, and appoints a receiver to take charge of the property involved, then no other court of co-ordinate jurisdiction has any power or authority to interfere or meddle with the property in the hands of the receiver, but must leave the court appointing the receiver untrammeled in its administration of the same, as the law directs, regardless of whether the original appointment was or was not erroneous. This rule is essential to the orderly administration of justice, and to prevent unseemly conflicts between courts whose jurisdiction embraces the same subjects and persons, and has no reference to the supremacy of one tribunal over the other, nor to the superiority in rank of the respective claims in behalf of which the conflicting jurisdictions are invoked." Vol. 23, R. C. L. p. 66.

This rule has been frequently followed by our courts. Harrison v. Waterbury, 27 S. W. 109; Dillingham v. Russell, 73 Tex. 47, 11 S. W. 139, 3 L. R. A. 634, 15 Am. St. Rep. 753; Ellis v. Water Co., 86 Tex. 111, 23 S. W. 858; Paime v. Carpenter, 51 Tex. Civ. App. 191, 111 S. W. 430; Waters-Pierce Co. v. State, 47 Tex. Civ. App. 162, 103 S. W. 839; Hammond v. Tarver, 11 Tex. Civ. App. 48, 31 S. W. 841.

[1] In the last-cited case this court expressed the opinion that the action of another court constituting such interference with the possession of a receiver would be void. It is true that we have a statute (article 2146, R. S. 1911) which authorizes suits against receivers without first obtaining leave of the court appointing such receiver. The last clause of the article indicates that the Legislature had in mind causes of action consisting of a demand for money, for it is provided "that it shall be the duty of the court to order said judgment paid out of any funds in the hands of said receiver as such receiver." However, our courts, in some of the cases above cited have used expressions indicating that the statute permits suits to establish causes of action in general; but there can be no doubt that such article does not confer upon any other court the right to enforce a judgment out of property in the hands of the receiver of another court, or to interfere with the custody and control of such property. The only article which authorizes enforcement of a judgment

by another court is article 2137, and that relates only to judgments for money, and even then application must first be made to the court having the custody of the property. In the case of Dillingham v. Russell, supra, the court said:

"No court can interfere with the custody of property held by another court through a receiver, but may establish by its judgment a debt against the receivership, which must be recognized even by the court appointing the receiver, and is not open to revision by it if the court rendering the judgment had jurisdiction of the subject-matter and the parties. The manner in which a judgment so rendered shall be paid, and the adjustment of equities between all persons having claims on the property and effects in the hands of a receiver made, must necessarily be under the control of the court having custody through its receiver, but this does not affect the jurisdiction of other courts conclusively to establish by judgment the existence and extent of a claim."

The property of the Valley Reservoir & Canal Company and the La Lomita Irrigation & Construction Company is in the hands of receivers appointed by the district court of Cameron county, under orders of said court requiring them to take possession thereof and to maintain and operate the same. The two irrigation systems are being operated as one system under an order of the court, of which some of the most important provisions have been copied herein. Under such order the receivers have been authorized to make contracts which confer preferential rights on those complying, by a certain date, with the regulations prescribed by the court, and to refuse to make contracts unless compliance is made with certain regulations. These matters are mentioned at this time only sufficiently for the purpose of disclosing the nature of the custody and control exercised over the properties by the court appointing the receivers.

Some of the appellants as to all of their land, and some as to part, failed to procure water, and applied to the district court of Bexar county for relief. The suit is not one to establish title to property or to establish a claim for money, but is one in which certain demands made by receivers are alleged to be unreasonable. The prayer is that each and all of such demands be adjudged to be unreasonable, and that certain writs issue for plaintiffs' benefit. While there is a prayer for an injunction, the relief really desired is that of mandamus; for the negative relief that the receivers be restrained from making certain demands to be complied with before they would furnish water would not accomplish plaintiffs' purpose. The relief by mandamus requiring that water be furnished, notwithstanding the failure of plaintiff to comply with the demands made, would necessarily include the

relief that the receivers should not make such demands. Again, there is a prayer that the receivers be enjoined from discriminating against plaintiffs, and that they be required to treat all alike that own water rights, and pay the reasonable rates and comply with the reasonable rules and regulations that may be established. If, by mandamus, the receivers are required to furnish plaintiffs such water as they need, there need be no injunction concerning discrimination. The real purpose of the suit is to require the receivers to supply water to plaintiffs, and it is evident that any judgment which does not provide for the summary relief prayed for would fail to subserve the purpose for which the suit was brought.

In order to determine to what extent, if any, the district court of Bexar county was asked to trespass upon the jurisdiction of the district court of Cameron county, it will be well to consider the nature of the property rights possessed by the irrigation company, which were taken into the custody of the court. The receivers were directed to take possession of all property of the defendants, and to keep, maintain, and operate all irrigation plants and properties of defendants. Speaking of the property rights of an irrigation company, the Supreme Court of California, in the case of Stanislaus Water Co. v. Bachman, 152 Cal. 716, 93 Pac. 858, 15 L. R. A. (N. S.) 359, said:

"The right to the water in the pipes and the pipes themselves usually constitute an appurtenance to real property in such cases, and, if so, the water usually retains its character as realty until severance is completed by its delivery from the pipes to the consumer. The right in water which has been diverted into ditches or other artificial conduits, for the purpose of conducting it to land for irrigation, has been uniformly classed as real property in this state. 'The right to water must be treated in this state as it has always been treated, as a right running with the land, and as a corporeal privilege bestowed upon the occupier or appropriator of the soil, and as such has none of the characteristics of mere personalty.' Hill v. Newman, 5 Cal. 446, 63 Am. Dec. 140. The right to have water flow from a river into a ditch is real property, and so also is the water while flowing in the ditch. Lower Kings River Water Ditch Co. v. Kings River & F. Canal Co., 60 Cal. 410. A wrongful diversion of water flowing in a ditch is an injury to real property. Last Chance Water Ditch Co. v. Emigrant Ditch Co., 129 Cal. 278, 61 Pac. 960. The right to take water from a river and conduct it to a tract of land is realty. South Tule Independent Ditch Co. v. King, 144 Cal. 454, 77 Pac. 1032. The right to have water flow through a pipe from a reservoir to and upon a tract of land is an appurtenance to the land. Standart v. Round Valley Water Co., 77 Cal. 403, 19 Pac. 689. An undivided interest in a ditch, and in the water flowing therein, is real property. Hayes v. Fine, 91 Cal. 398, 27 Pac. 772. A ditch for carrying water is real estate. Smith v. O'Hara, 43 Cal. 376; Bradley v. Harkness, 26 Cal. 77. And where one person

has water flowing in a ditch, and another has the right to have a part of such water flow from the ditch to his land for its irrigation, the right of the latter is a servitude upon the ditch, and is real property. Dorris v. Sullivan, 90 Cal. 286, 27 Pac. 216."

[2-4] This quotation aptly shows the nature of the property rights of the irrigation company and those of the plaintiffs. When the court took into its custody the property of the irrigation company it took the water flowing in the canals as a part thereof. No other court has a right to interfere with such possession. Appellants contend there would be no such interference even if the receivers should be required to deliver water from such canals to appellants. However, if the water is realty, it would seem that an order requiring the receivers to part with the possession thereof would be, in legal effect, making them relinquish possession of part of the property. It appears to us that the claim of a right to enforce a servitude upon the canals and ditches is one affecting the custody and possession of such canals and ditches.

[5, 6] In addition there is involved the question of interference with the management of the business of the irrigation company, which was undertaken by the district court of Cameron county through its receivers. If a court has the right to continue a certain business through its receivers, it appears to us that its right of management should be as free from interference by other courts as is its right of possession and custody. In this case the court undertook the management, through its receivers, of the irrigation system. It may have erred in making its provisions relating thereto. It may have made provisions which are unjust and unreasonable. Nevertheless it assumed the management, and directed its receivers to make contracts with persons for the furnishing of water, upon terms which would confer a preferential right upon those who complied with the prescribed regulations within a certain time. Contracts made by receivers under authority given by the court are in a substantial sense the contracts of the court, and cannot be annulled at the pleasure of the court. R. C. L. vol. 23, § 82, p. 77. While the order of the court was made in a proceeding to which plaintiffs were not parties, and therefore not conclusive of any rights they have, nevertheless it constitutes the warrant of authority for the contracts made by the receivers, and must be read into such contracts. It shows the extent of the control and management asserted by the court, and, we might say, the extent of the jurisdiction assumed by it. If it is permitted to continue a business, it must be granted the right to make contracts. If

other courts can direct the receivers to ignore the contracts and to ignore the order of the court on the alleged ground that it is void, it appears to us that great confusion would result. The right to control the receivers with regard to the management of the business necessarily excludes the right of other courts to interfere therewith, even as the right to possession excludes the rights of other courts to interfere therewith. Receivers are required by statute to give bond that they will obey the orders of the court which appointed them. Article 2132, R. S. 1911. They are empowered to do such acts respecting the property as the court may authorize. Article 2133. Certainly the district court of another county could not command them with respect to the very matters concerning which they have received orders from the court which appointed them. The effect would be that one court would command another how to manage property in its possession. Nor can we perceive that there would be any difference in principle if certain provisions of the order of the court under which the receivers are acting should be held void. The fact remains that, as to the management and control of said property the orders to the receivers are exclusively to be given by the court appointing them.

The appellants rely upon the case of Bank v. Goolsby, 12 Tex. Civ. App. 362, 35 S. W. 713. In that case prior to the appointment of the receiver the property had been sold and delivered to Goolsby. An attachment had been levied thereon in Hunt county, and Goolsby had made affidavit and bond under the statutes relating to trial of right to property. These instruments under the statute were filed in the district court of Hunt county, which had jurisdiction of the proceeding. Articles 7776, 7778, R. S. 1911. The court held that the property was thereby placed in the custody of the district court of Hunt county, and that it had the power to protect such custody. The district court of Hunt county acquired jurisdiction over the property one day before the district court of Marion county appointed the receiver and ordered him to take possession of the same. In this case there is no contention that the injunction applied for would be one in aid of or to protect the jurisdiction of the district court of Bexar county.

Appellants also rely upon the case of R. R. Commission v. Alabama, G. S. R. Co., 185 Ala. 354, 64 South. 13, L. R. A. 1915D, 98, in which it was held that a state court could mandamus receivers of a railroad company, appointed by the federal court, to enforce an order of the railroad commission providing for union stations. It was held that the proceeding did not involve the actual custody or control of the receivers over the property. The court quotes from the opinion in the

case of Ft. Dodge v. Railway, 87 Iowa, 389, 54 N. W. 243, in support of its holding, but the language quoted relates only to the contentions of lien creditors to the effect that the property in the hands of receivers constituted a trust fund to pay their debts, which could not be diverted to the construction of a crossing. As a matter of fact that case was filed in the very court which had appointed the receiver to take charge of the railway company's property in Iowa. In the Alabama case the court laid great stress upon the fact that those interested in the estate being administered by receivers could not object to the use of the funds for the purpose of complying with a statute of the state. The order would have the effect of exacting from the receivers compliance with a statute relating to rights of the public. The expenditure would perhaps make the trust estate less valuable, but those having an interest therein or claim thereto acquired such interest or claim with knowledge of and subject to the statutes. The purpose for which the court was administering the estate was to determine and adjust the rights of the persons who asserted claims to or equities in such estate. Such an order as was contemplated by the Alabama court would not affect the respective rights of creditors or claimants as between one another, and probably the court's conclusion is based entirely upon the theory that the interference from which the receivers are protected is such as would affect the rights of private ownership asserted in or to such estate. In other words, that the custody and control for the purpose for which it is granted by law is not interfered with. If such a distinction is permissible, the case in no way supports appellants' contention. If such a distinction is not sound, we are unable to reconcile that opinion with the views entertained by us.

We find in High on Receivers, § 374 (4th Ed.) the following statement:

"So when a railway is being operated by a receiver, appointed by a court of competent jurisdiction, mandamus will not lie against the company and its receiver to direct or control the operations of the road, the court appointing the receiver being fully empowered to determine all questions in controversy."

The case cited (State v. Railway, 35 Ohio St. 154) is not accessible to us.

[7] The views expressed by us have led us to conclude that an order granting an injunction or mandamus as prayed for, or which could appropriately issue under the pleadings, would constitute an interference with the possession, control, and management of the receivers, and that therefore the trial court was correct in sustaining the plea to the jurisdiction.

The judgment is affirmed.