EDINBURG IRR. CO. v. PASCHEN et al. (No. 244–3439.)

(Commission of Appeals of Texas, Section B. Jan. 4, 1922.)

I. Waters and water courses ⬅249—Permanent water rights are servitude upon irrigation system.

Permanent water rights evidenced by grants or certificates are easements appurtenant to the land to be watered, and are a servitude upon an irrigation system, and any one dealing either with the land to which the easement is appurtenant or with the servient irrigation system, with notice, actual or constructive, must take subject to the easement, under Vernon's Sayles' Ann. Civ. St. 1914, art. 5002e.

2. Waters and water courses ⬅232—Order in receivership proceeding not binding upon users of water having interest in irrigation system unless parties.

An order of sale by receivers free from incumbrances and permanent water rights under contracts of irrigation system, ancillary to a foreclosure of a mortgage on the system, was not binding upon landowners having permanent water rights under contracts, the proceeding being one quasi in rem, and not one in rem.

3. Receivers ⬅141—Appointment and sale of property does not divest liens.

The appointment of a receiver over property does not affect existing liens or other vested rights in the property, and a sale by the receiver has no effect to divest such liens or rights where the parties holding them are not properly before the court.

4. Waters and water courses ⬅232 — Landowners having permanent water rights not before the court through publication in newspapers.

Landowners having permanent water rights under contracts with irrigation system were not within the jurisdiction of the court in a receivership proceeding, ancillary to foreclosure of a mortgage, where they were not served with process, but only by notice published in newspapers requiring every one interested in the property to assert their rights, and an order of sale of the system free from contract rights of such property owners did not bind the latter, it being necessary to bring such parties before the court in the manner prescribed by law, and to put their water rights in issue by proper pleadings.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Suit by William E. Paschen and others against the Edinburg Irrigation Company. From a judgment of the Court of Civil Appeals (223 S. W. 329) affirming an order awarding preliminary mandatory writ of injunction, defendant brings error. Affirmed.

Glasscock, McDaniel & Bounds, of McAllen, for plaintiff in error.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Don A. Bliss, of San Antonio, W. L. Dawson, of Mission, and F. W. Seabury, of Brownsville, for defendants in error.

McCLENDON, P. J. We have in this case for review a judgment of the Court of Civil Appeals, which affirmed an interlocutory order of the district court awarding a mandatory writ of injunction requiring the plaintiff in error to furnish to defendants in error water to irrigate certain lands during the pendency of the suit, upon compliance by the latter with certain requirements of the order. The controlling question in the case is whether the irrigation company, which purchased the irrigation system under receiver's sale, acquired the irrigation plant free from the water rights which defendants in error had prior to the receivership acquired from the corporation then owning the plant; defendants in error not being parties to the receivership proceeding. The facts necessary to a clear understanding of the issue thus presented may be briefly stated as follows:

The Valley Reservoir & Canal Company owned and operated an irrigation system that had been constructed for the purpose of irrigating a large body of land owned in part by John Closner and William F. Sprague, in part by the Edinburg Townsite Company and in part by the Valley Reservoir & Canal Company. Closner and Sprague owned all the capital stock of these two companies, and controlled their affairs. From time to time Closner and Sprague, the canal company, and the town-site company made sales of these lands in 20-acre tracts, the deeds conveying which provided for permanent water rights appurtenant thereto. These water rights constituted a part of the consideration of each deed, and with each deed was delivered to the purchaser a water right contract which carried with it certain obligations on the part of the grantee in the deed. The deeds expressly reserved vendor's liens upon the land in favor of the canal company to secure compliance by the grantees of their obligations embodied in the water rights contracts. Each of the defendants in error purchased from Closner and Sprague several of these tracts, and received as part of the consideration the usual canal company water rights contracts.

Prior to the year 1914 Paschen and Davidson had prepared portions of their lands for irrigation. Each paid the flat rate required by the terms of their water rights contracts, and the amounts required for the actual supply of water for the respective years on their respective tracts. Later a controversy arose over the failure of the canal company to furnish sufficient water; and, while this controversy was pending, the American National Insurance Company and the San Antonio Loan & Trust Company brought suit in the district court of Cameron county against Closner, Sprague, the canal company, and the town-site company to foreclose certain mortgage liens on the property, including the irrigation system of the canal company. These mortgage liens were acquired by the insurance company and trust company long after defendants in error had acquired their water rights. Receivers of the properties were appointed by the district court, and, after administering the property for some time, it was finally sold by the receivers under order of court for the purpose of satisfying the mortgage debts, as well as receivers' certificates which had been issued in large amounts to operate the plant during the receivership, and other court expenses. The order of sale provided that the property be sold free of all liens, incumbrances, water rights, claims, etc. Through mesne conveyances under this order the property was purchased by plaintiff in error. Defendants in error were not parties to the receivership proceeding, but during its pendency, and prior to the order of sale, a general order was issued providing that—

"All persons, corporations and associations of persons having liens, debts or claims of any character whatsoever against the defendants in this suit [naming them] or any or either of them into or in respect to the properties in the hands of the receiver be, and they are hereby, required to file interventions, setting up their rights in this cause on or before March 9, A. D. 1917, and that all claims not so presented by intervention prior to the final decree herein be concluded thereby."

Later the time for filing interventions was extended to May 18, 1917. These orders were published in newspapers in Hidalgo and Bexar counties, but were not brought to the attention of defendants in error; and they did not know of these orders, or that the sale was made purporting to divest their water rights, until after the receivership had been closed. During the receivership various farmers having water rights in the canal system held meetings and employed counsel to represent their interests in the receivership suit, and an intervention was made in their behalf, in which, however, defendants in error declined to join. During the receivership the court fixed rates under which the receiver was authorized to furnish water to the various landowners owning water rights. Defendants in error objected to paying these rates, and they and other water right holders brought suit against the receivers in the district court of Bexar county to compel furnishing water under their original contracts. The Court of Civil Appeals affirmed the trial court's judgment dismissing this suit upon the ground that the property was in custodia legis, and only the court appointing the receivers had jurisdiction to fix the terms upon which, during the receivership, the officers of the court could be compelled to furnish

235 S.W.—69

water. Mudge v. Hughes (Civ. App.) 212 S. W. 819. Writ of error was applied for and denied. Thereafter defendants in error were furnished water by the receivers under the terms prescribed by the court. They did not, however, make any appearance in the case.

After the property had been sold to plaintiff in error defendants in error demanded that water be furnished them, which was refused, unless defendants in error would execute new contracts upon higher rates than those in their original contracts, and under different terms and stipulations. Thereupon defendant in error Paschen brought this suit, which was in the form of an original bill in equity, to require plaintiff in error to furnish the water under the terms of the original contracts, defendant in error tendering the water charges provided in those contracts and also offering, if the court should find that such rate was unreasonably low, and that plaintiff in error was entitled to charge a higher rate, to pay whatever rate the court might fix. Defendant in error Davidson intervened, setting up his water rights and adopting the pleadings of Paschen. There was also an intervention by a large number of farmers who had made new contracts required by plaintiff in error, setting up their rights and resisting the claims of defendants in error. The defendants in error also sought a temporary injunction requiring that water be supplied them pending the suit. The trial court, after full hearing upon this application, issued an order requiring plaintiff in error to furnish the water to defendants in error upon their complying with certain requirements in the order, among which was the payment of the same rates which the other water takers were required to pay. This order was appealed from, and the action of the trial court in that regard was affirmed by the Court of Civil Appeals. 223 S. W. 329.

After a very careful review of the authorities, we have reached the conclusion that the judgment of the Court of Civil Appeals should be affirmed.

It is urged by defendants in error that the court was without power either to divest their water rights or to revise the rates provided in their contracts, even though they had been brought by legal process into the receivership suit, and their rights put in issue by adequate pleadings. This contention is grounded upon the proposition that these water rights constitute vested property interests, superior to the claims of mortgage creditors, and such divestiture would amount to a taking of private property without compensation. There is much force in this contention, and ample authority might be cited in its support. Stanislaus v. Buchman, 152 Cal. 716, 93 Pac. 858, 15 L. R. A. (N. S.) 359; Allen v. Railroad Commission, 179 Cal. 68, 175 Pac. 468, 8 A. L. R. 249; 2 Weil on Water Rights in Western States, 1219; 3 Kinney on Irrigation and Water Rights (2d Ed.) 2499. But in the present stage of this proceeding we are not called upon to pass upon this question, and its difficulty and importance render the expression of an opinion out of place. That portion of the interlocutory order requiring defendants in error, pending final hearing upon the merits of the case, to pay the same rates charged other water takers is favorable to plaintiff in error, and defendants in error have not appealed from the order.

The vested character of the rights with which we are dealing has essential bearing upon the vital question presented in the appeal, namely, the effect of the order in the receivership proceeding to which defendants in error were not parties, attempting to divest their water rights.

[1] It has long been held that permanent water rights, evidenced by grants or certificates of the character here in issue, are easements appurtenant to the land to be watered, and are a servitude upon the irrigation system. Consequently every one dealing either with the land to which the easement is appurtenant or with the servient irrigation system, with notice, actual or constructive, must take subject to the easement. The nature of such easement and servitude are very ably considered in Mudge v. Hughes, supra. This view of the character of such water rights has been enacted into statute in this state in language following:

"The permanent water right shall be an easement to the land and pass with the title thereto; and the owner thereof shall be entitled to the use of the water upon the terms provided in his or their contract with such person, association of persons or corporation, or, in case no contract is entered into, then at just and reasonable prices, and without discrimination. Any instrument of writing conveying a permanent water right shall be admitted to record in the same manner as other instruments relating to the conveyance of land." Vernon's Sayles' Texas Civil Statutes 1914, art. 5002e.

[2] The contention of plaintiff in error that this order was binding upon defendants in error is based upon the proposition that the sale by receivers was a proceeding in rem, and that the order of sale was therefore binding upon every one having any interest in the property. It may be conceded that this rule would be applicable were the proceeding one strictly in rem; but it has never been held that the foreclosure of a mortgage, or a receivership ancillary thereto, is such a proceeding. It belongs to that class of proceedings more properly denominated as quasi in rem. Jurisdiction in the two classes of cases is very clearly defined in the following quotation from 2 Black on Judgments:

"It is a distinguishing peculiarity of a proceeding in rem that the jurisdiction of the court, in the particular case, rests merely upon the seizure or attachment of the property. No personal notice to any individual is required. The res, being brought within the jurisdiction of the court, becomes subject to its adjudication, and all parties interested are supposed to be duly apprised of the proceedings by the mere taking of the property, or by the usual proclamation or published notice. This jurisdiction empowers the court to adjudicate upon the status of the res, or to order it to be disposed of in a given way, according to the object of the action. Of course it does not authorize the fastening of a personal liability upon any individual not personally served. The jurisdiction is over the thing itself, and only the thing itself can be disposed of, though the rights of owners or claimants may be incidentally affected. Hence, also, in proceedings of this character, exclusive jurisdiction, for the purposes of its own suit, is acquired by the court which first takes possession of the res. But where the proceeding is not strictly in rem, but belongs to the class of actions which are only quasi in rem, the court cannot render a judgment which shall be valid against the rights of third persons, unless it is shown that such third persons have voluntarily appeared and become parties to the suit, or have had legal notice of the pendency of the suit and an opportunity to be heard therein." (2d Ed.) p. 794.

This subject is treated in the following texts with full citations of authorities: 23 Cyc. p. 1410; 15 R. C. L. pp. 629–631.

That a suit to foreclose a mortgage is only quasi in rem, and a judgment therein binding only upon those parties to the suit and their privies, is not now subject to question. Nor does the fact that the court in which the foreclosure is brought appoints a receiver over the property change the nature of the proceeding into one strictly in rem.

The nature of a receivership and the powers of the appointing court and of the receiver are admirably summarized by the Supreme Court of the United States in the celebrated case of Davis v. Gray, 16 Wall. 217, 21 L. Ed. 447, as follows:

"A receiver is appointed upon a principle of justice for the benefit of all concerned. Every kind of property of such a nature that, if legal, it might be taken in execution, may, if equitable, be put into his possession. Hence the appointment has been said to be an equitable execution. He is virtually a representative of the court, and of all the parties in interest in the litigation wherein he is appointed. He is required to take possession of property as directed, because it is deemed more for the interests of justice that he should do so than that the property should be in the possession of either of the parties in the litigation. He is not appointed for the benefit of either of the parties, but of all concerned. Money or property in his hands is in custodia legis. He has only such power and authority as are given him by the court, and must not exceed the prescribed limits. The court will not allow him to be sued touching the property in his charge, nor for any malfeasance as to the parties, or others, without its consent; nor will it permit his possession to be disturbed by force, nor violence to be offered to his person while in the discharge of his official duties. In such cases the court will vindicate its authority, and, if need be, will punish the offender by fine and imprisonment for contempt. The same rules are applied to the possession of a sequestrator. Where property in the hands of the receiver is claimed by another, the right may be tried by proper issues at law, by a reference to a master, or otherwise, as the court in its discretion may see fit to direct. Where property in the possession of a third person is claimed by the receiver, the complainant must make such person a party by amending the bill, or the receiver must proceed against him by suit in the ordinary way."

[3] The appointment of a receiver over property does not affect existing liens or other vested rights in the property, and a sale by the receiver has no effect to divest such liens or rights where the parties holding them are not properly before the court. Railway v. Lewis, 81 Tex. 6, 16 S. W. 647, 26 Am. St. Rep. 776; 23 R. C. L. p. 100; 4 Pomeroy on Equity Jurisprudence, 1633; 34 Cyc. pp. 320 and 334; 23 A. & E. Encyc. of Law, pp. 1091–1093. Authority upon this point might be multiplied indefinitely.

The rule is thus stated in Pomeroy, supra:

"A receiver's sale is subject to liens of those who are not parties to the receivership proceedings. A lienholder has a right of which he cannot be deprived without an opportunity for a day in court."

The following is from A. & E. Encyc. of Law, supra:

"The appointment of a receiver for property does not affect pre-existing liens upon the property, or vested rights or interests of third persons therein. And the same is true whether the receiver claims by virtue of his appointment alone, or under a conveyance or assignment executed to him by the debtor in aid thereof, or whether the lien or right or interest in question has its origin in contract, or arises by operation of law. A receiver, it is held, succeeds to only such right, title, and interest in the property as the individual or corporation for which he is appointed receiver had at the time the appointment was made. The receiver takes his title to the property subject to all the equities to which it was subject in the hands of the debtor."

High on Receivers states the rule thus:

"And since the appointment of a receiver does not divest existing liens upon the property which is subject to the receivership, it follows that a sale by a receiver of a partnership of property mortgaged by the firm gives to the purchaser only such interest as the firm itself had in the property, and does not divest or impair the paramount mortgage lien of a stranger to the action in which the receiver was appointed. So, when executions have become liens upon personal property, a sale of such

property by a receiver subsequently appointed in an action to which the lienholders were not parties will not divest their liens, which may still be enforced notwithstanding such sale."

It seems quite clear to us that permanent water rights, which are held to be real estate, and easements appurtenant to and passing with the title to land, constitute such vested property interests as cannot be divested by foreclosure sale under receivership, without bringing the owner of those rights into court by legal process. The exact question was decided in the Buchman Case, above, from which we quote:

"The mortgage of the water system of the Stanislaus & San Joaquin Water Company, by foreclosure whereof the plaintiff obtained title thereto, is not set forth in the record, and hence we cannot determine whether or not it was contemplated that that company, as a going concern, was thereby authorized to make contracts, such as that with Threlfall, whereby it might obtain funds to pay the principal and interest of the mortgage, and by which the mortgagee would be bound. But, if that mortgage was paramount to Threlfall's rights, it could not be enforced against him without a foreclosure to which he was a party, if suit was begun, as is conceded here, after his contract was recorded. He was not made a party thereto, and the consequence is that the plaintiff holds the canal system and the waters thereof subject to the rights of Threlfall and his successors in interest—at least until those rights have been terminated by foreclosure proceedings to which he, or they, are parties." Stanislaus Water Co. v. Buchman, 152 Cal. 716, 93 Pac. 858, 15 L. R. A. (N. S.) 364.

[4] The contention that, since the court had general jurisdiction over the subject-matter, the property being situated within its territorial limits, and that, since the defendants in error had actual knowledge of the receivership and the property was in custodia legis, and notice was published in the newspapers requiring every one interested in the property to assert their rights, the order was binding upon defendants in error, is not tenable. Jurisdiction in a particular matter requires something more than that the court has general jurisdiction of the parties and subject-matter, and has taken into custody the physical and legal possession of the property in litigation; it requires that the parties whose rights are to be affected be brought before the court in the manner prescribed by law, and that their interest be put in issue in the particular action before the court. Both of these elements were lacking in the present instance. To bring defendants in error before the court putting in issue their water rights, it was essential that some pleading be filed drawing into the litigation those water rights, and notice of such pleading, in the manner required in a plenary suit under our procedure, should have been served. 23 Cyc. 684; Dunlap v. Southerlin, 63 Tex. 38.

We are not to be understood as in any way questioning the well-defined general jurisdiction of courts to settle all contested interests in property which lies within their territorial jurisdiction, even as to parties nonresident and actually beyond their jurisdiction. But, where the proceeding is only quasi in rem, such jurisdiction can only be exercised by bringing such rights in issue by proper pleading, and by service, actual or constructive, in the prescribed legal method.

It is urged by plaintiff in error that the judgment of the Court of Civil Appeals is inconsistent with the decisions in McHenry v. Bank (Civ. App.) 206 S. W. 560, and Mudge v. Hughes (Civ. App.) 212 S. W. 819, in the former of which cases writ of error was denied. We think it only necessary to state that in the McHenry Case the owners of the water rights were parties to the proceeding, and did not appeal from the order of sale which divested those rights, and in the Mudge Case the only question presented was the power of the Bexar county court to adjudicate the rights of landowners to have the receiver of another court furnish water under terms other than those fixed by the court appointing the receiver. The questions decided in those cases have no bearing whatever upon the question now before us.

We conclude that the judgment of the Court of Civil Appeals should be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.