## GOODWIN et al. v. HIDALGO COUNTY WATER CONTROL & IMPROVEMENT DIST. NO. I.

### No. 9025.

Court of Civil Appeals of Texas.
San Antonio.
March 22, 1933.

Rehearing Denied April 12, 1933.

Hill & Greer, of Mission, and J. R. Dougherty and L. J. Freeman, both of Beeville, for appellants.

Brown & Bader, of Edinburg, Don A. Bliss, of San Antonio, and Cofer & Cofer, of Austin, for appellee.

MURRAY, Justice.

This is the second appeal of this case. The first appeal was by writ of error. The majority opinion of this court is reported in 14 S.W.(2d) 321. See, also, 6 S.W.(2d) 234. The opinion of Section A, Commission of Appeals, is reported in 25 S.W.(2d) 813, 819.

The written instrument out of which this controversy arose is set out in full in hæc verba in both of said opinions, and will not be recopied here.

The all-important question in this appeal is, Have the appellants proceeded under this optional contract to such an extent as to amount to an exercise of the option extended, thereby making this option a binding contract?

The appellants are E. M. Goodwin and Hidalgo county water control and improvement district No. 6. The appellee is Hidalgo county water control and improvement district No. 1.

By a careful reading of the written instrument involved in this controversy, it will be seen that it is an offer on the part of district No. 1 to contract with the new district to be created (which afterward became district No. 6) and E. M. Goodwin. This writing is divided into two divisions, to wit, "a" and "b." Division "a" states the optional features, and division "b" states the terms and stipulations

of the offer. The offer contained in this writing had to be accepted by either one or both of appellants before it could become a binding contract in any of its terms.

■ The only claim of acceptance advanced by appellee is that appellants proceeded under the terms of this option and thereby accepted the offer extended to them. Unless appellants have so proceeded, this option cannot be enforced against either of them. Appellee bases its contention that the option had been exercised primarily upon the contention that the Commission of Appeals in its opinion in the former appeal held, as a matter of law, that appellants herein had proceeded under the option and had thereby accepted the terms of the same; that as a result of such holding that question is now res adjudicata, and cannot be further inquired into. We cannot agree with this contention for many reasons.

In the first place, very different pleadings and evidence are offered on this appeal from those which were offered on the former appeal. On the former appeal appellee proceeded to trial on its first amended original petition; on this appeal appellee proceeded to trial on its third amended original petition. The two petitions are very different and ask for different remedies. On the former appeal the statement of facts contained 514 pages, while on this appeal the statement of facts contains 1,675 pages. It would not be practicable to here point out the many differences in both the pleadings and the evidence. It is well-settled law in this state that the opinion of the appellate court cannot be considered as res adjudicata in subsequent trials and appeals where both the pleadings and the evidence are different. Frankland v. Cassaday, 62 Tex. 418; Green v. Priddy, 112 Tex. 567, 250 S. W. 656; Roberts v. Armstrong (Tex. Com. App.) 231 S. W. 371; Ogden v. Bosse (Tex. Civ. App.) 23 S. W. 730 (reversed on other grounds) 86 Tex. 336, 24 S. W. 798; 3 Tex. Jur. § 942, p. 1342; Barcus v. J. I. Case, etc., Co. (Tex. Civ. App.) 209 S. W. 205; Galveston, H. & S. A. Ry. Co. v. Faber, 77 Tex. 153, 8 S. W. 64; Kempner v. Huddleston, 90 Tex. 182, 37 S. W. 1066; 4 Corpus Juris, p. 1217, § 3268; Woods v. Bost (Tex. Civ. App.) 26 S.W.(2d) 299.

However, treating the opinion of the Commission of Appeals as res adjudicata, it does not hold that district No. 6 ever proceeded under the option. It only holds that Goodwin so proceeded. In holding that Goodwin so proceeded under the option, the Commission of Appeals was passing on the facts that were then before it, and could not have been passing upon all the facts and circumstances presented in the present statement of facts. If the Commission of Appeals had intended that such holding should forever settle the question, it would have reversed and rendered this cause as to Goodwin instead of only reversing and remanding the entire cause.

■ Were the facts in the present record so clear and undisputed as to justify the trial court in finding, as a matter of law, that Goodwin had proceeded under the contract? Before discussing this question, we wish to set out chronologically the events as they happened:

(1) In the early part of 1926 Goodwin secured an option on 5,600 acres of land and began negotiations with district No. 1 for water rights.

(2) On May 24, 1926, Goodwin filed application with the board of water engineers for a water permit.

(3) On June 26, 1926, the written option out of which this cause grows was signed by district No. 1 and Goodwin.

(4) On September 29, 1926, board of water engineers granted Goodwin a water permit.

(5) On September 1, 1927, district No. 1 passed a resolution extending time of maturity to September 1, 1927.

(6) During February, 1927, district No. 6 was organized and incorporated.

(7) Shortly after district No. 6 was organized, it notified district No. 1 that it would not accept the option extended to it in the writing of June 26, 1926.

(8) On June 15, 1927, board of water engineers issued a water permit to Goodwin.

(9) On August 15, 1927, Goodwin assigned this water permit to district No. 6.

It will be seen from the above statement that Goodwin had already proceeded with his application for a water permit before the option was executed on June 26, 1926. The evidence further shows that Goodwin informed district No. 1 that he might decide to irrigate his land by establishing his own irrigation system and take water from the Rio Grande.

It further appears from the evidence that the officers of district No. 1 were laboring under the false impression that they had a binding contract, in any event, with Goodwin, and but for this false impression would not have waived their rights and urged the water board to issue Goodwin a water permit. Goodwin could not be held responsible for this false impression, unless he created it by his own fraudulent conduct, which was neither pleaded nor proved. There is considerable doubt that a permanent water right can be waived in the manner in which district No. 1 contends that it waived its prior rights. Article 7559, R. C. S. 1925, in effect declares a permanent water right to be real estate and an easement to the land, and to pass with the title thereto. Under the statute of frauds, article 3995, R. C. S. 1925, an oral waiver would be insufficient to pass title to a permanent water right. Furthermore, both appellants herein have filed written disclaimers of any title to appellee's prior water rights.

Subdivision "a" of the option first extends

1094

an option to the new district to be created, and only in the event no new district is created does it extend an option to Goodwin. This is plain from the writing itself, which reads as follows: "It is contemplated by the said E. M. Goodwin that a water improvement district, or a water control and improvement district, shall be organized and after the incorporation of such a district, said district as so incorporated shall have the right at its option to contract with the said Hidalgo County Water Control and Improvement District No. 1, as hereinafter set forth, and that in the event no such district should be organized under the laws of the State of Texas, then the said E. M. Goodwin at his option shall have the right to contract upon the terms and under the conditions as hereinafter set forth."

The new district was actually created, and therefore no option was even extended to Goodwin. The creation of district No. 6 by Goodwin could not be construed as an acceptance of an option which was not extended to him in the event he did this very act, that is, created district No. 6.

The granting of the permit was an act of the board of water engineers and not an act of Goodwin. The question as to whether or not Goodwin induced district No. 1 to waive its prior appropriation of water and as to whether district No. 1 acted in the capacity of a volunteer in waiving its prior rights were disputed questions of fact.

It seems to us that, placing all of these facts in the most favorable light, the greatest deduction that could be made is that a question of fact as to whether or not Goodwin had proceeded under the option was raised, which should have been submitted to the jury. For the court to decide as a matter of law that Goodwin had proceeded under the option was error.

◼ As to district No. 6, we can find no evidence which tends to show that it had proceeded under the contract. In the first place district No. 6, as soon as it was created, notified district No. 1 that it would not accept the option and definitely declined the offer. This ended the matter as far as district No. 6 was concerned. As said in the American Law Institute's Restatement of the Law of Contracts, § 34:

"An offer until terminated gives to the offeree a continuing power to create a contract by acceptance of the offer."

Section 35: "An offer may be terminated by (a) rejection by the offeree."

Section 37: "A communication from the offeree to the offeror, stating in effect that the offeree declines to accept the offer is a rejection."

Goodwin or no one else could bind district No. 6 before it was created, and its rejection of the offer terminated the matter as far as district No. 6 was concerned. The fact that several months after such rejection district No. 6 purchased the water permit from Goodwin could not be construed as the acceptance of an offer already definitely rejected. If Goodwin did not have good title to the water permit, and district No. 6 was charged with knowledge of this fact, it would not be an innocent purchaser of the permit, and might be forced to surrender such permit, but certainly could not be forced to perform the many provisions and stipulations of an option that it had previously rejected. Especially is this true since water rights are real property. R. C. S. art. 7559; Texas Co. v. Burkett, 117 Tex. 16, 296 S. W. 273, 54 A. L. R. 1397; Edinburg Irrigation Co. v. Paschen (Tex. Com. App.) 235 S. W. 1088; 20 Tex. Jur. § 64, p. 274; Mudge v. Hughes (Tex. Civ. App.) 212 S. W. 819; McGhee, etc., Co. v. Hudson, 85 Tex. 587, 22 S. W. 398. Where personal property is wrongfully taken, the owner may treat the property as belonging to the wrongful taker and sue for the value of the property taken. With real estate the rule is different, the suit must be for the recovery of the real estate, together with rents and damages. 26 R. C. L. 1098; Hooser v. G. M. Carlton Bros. & Co. (Tex. Civ. App.) 288 S. W. 1095; Willis & Bro. v. Morris, 66 Tex. 628, 1 S. W. 799, 59 Am. Rep. 634.

◼ District No. 6, by accepting the water permit, did not accept all of the terms of the option. Weatherford, etc., Ry. Co. v. Granger, 86 Tex. 350, 24 S. W. 795, 798, 40 Am. St. Rep. 837, in which opinion we find the following language by the Supreme Court: "We deem it proper to say in conclusion that if the opinion in the case of McDonough v. Bank, 34 Tex. 309, is to be construed as holding that by merely accepting the benefit of the plaintiff's labor the defendant ratified and became bound under the promoter's contract, it does not meet our approval."

◼ There is another reason why district No. 6 is not bound by the terms of the option. The option involved the conveyance of real estate, and was a contract not to be performed within one year. Our statute of frauds, article 3995, R. S. 1925, provides that such contracts to be valid must be in writing and signed by the party to be charged. There is no contention that district No. 6 signed either the option or any written acceptance of the same.

District No. 6 did not accept the permit under the terms of the option, but rather in breach of same. If Goodwin was bound by the option, it was his duty to convey this permit to district No. 1. Contrary to the terms of the option, he conveyed the permit to district No. 6. This might be a breach of the option, but could not be a performance of the option. District No. 6 could not accept the option by breaching its terms.

It seems that the theory on which the trial court proceeded was that, while the writing of June 26, 1926, was a mere option, never-

theless paragraph 9 of division "b" thereof was not optional, or that, while Goodwin and district No. 6 had not accepted all of the paragraphs of the option, they had accepted paragraph 9 of subdivision "b." We say this because the trial judge did not submit but one question to the jury, and that had to do with the value per acre of the water appropriations and/or the permit. The trial court therefore found, as a matter of law, that paragraph 9 of subdivision "b" was a binding obligation, and that the other paragraphs of subdivision b were not binding obligations, because, if all paragraphs of the option were binding, the price of the water permit per acre was fixed at $17.50. The trial court probably made this holding on account of the language found in the opinion of the Commission of Appeals, which is as follows: "This provision of the contract is not optional with reference to the obligations on the part of Goodwin to convey the additional water permit to the district. It is an unconditional agreement on his part. Under section 9 he agreed to convey to the district any water rights he might secure. * * * We are of the opinion that upon its face section 9 of the contract is not an optional contract."

Upon this construction of the option appellee was given a judgment in the sum of $169,-500, together with a mandamus compelling the officers of district No. 6 to levy a tax against the landowners in such district sufficient to pay the judgment. However, appellee in its brief repudiates this construction of the option in the following language: "This was an illogical holding, of course. Paragraph 9 can only become, and is, binding only because it is a part and parcel of the entire contract, optional in its inception, but which had become binding in its entirety because, as the Supreme Court had held, the option had been exercised. We did not then, have never, and do not now, make any such foolish contention that paragraph 9 of the contract can become binding except in so far as the same is an integral part of the entire contract, paragraphs 1–11, inclusive. We have insisted at all times that the option had been exercised; that the contract in its entirety had become binding; and that paragraph 9 of the contract had become binding because it was a part of the entire contract and one of the eleven paragraphs thereof. * * * We do not quite appreciate the attempt of the learned counsel to saddle this ridiculous contention upon us after we had argued for a week the very contrary. * * *"

We are unwilling to believe that the Commission of Appeals intended to hold that paragraph 9 of subdivision "b" of the option could stand alone and be a binding contract while all the other paragraphs of subdivision "b" remained optional. It seems there can be no question but that paragraph 9 must stand or fall along with all the other paragraphs of subdivision "b" of the contract.

Having concluded that the writing of June 26, 1926, was a mere option, that it was not only never accepted by district No. 6, but definitely rejected, that the evidence does not show as a matter of law that Goodwin had accepted the option extended, we cannot permit the judgment in this case to stand.

■ Appellants contend that appellee's cause of action, as alleged in appellee's third amended original petition, filed on October 31, 1931, was barred by the statute of limitations. We cannot agree with this contention. Article 5539b, as amended by the Acts 1931, 42d Leg. p. 194, c. 115, § 1 (Vernon's Ann. Civ. St. art. 5539b) provides as follows: "Whenever any pleading is filed by any party to a suit embracing any cause of action, cross-action, counterclaim, or defense, and at the time of filing such pleading such cause of action, cross-action, counterclaim, or defense is not subject to a plea of limitation, no subsequent amendment or supplement changing any of the facts or grounds of liability or of defense shall be subject to a plea of limitation, provided such amendment or supplement is not wholly based upon and grows out of a new, distinct or different transaction and occurrence. Provided, however, when any such amendment or supplement is filed, if any new or different facts are alleged, upon application of the opposite party, the court may postpone or continue the case as justice may require."

It is clear that the cause of action stated in appellee's third amended original petition is not based upon, and does not grow out of, a new, distinct, or different transaction and occurrence from that stated in its original petition, and is not therefore barred by any statute of limitation.

There are other assignments of error with reference to the charge of the court and argument of counsel. As these matters will not probably occur upon another trial, we will not discuss them here. The disposition we make of this case renders these assignments immaterial.

The judgment of the court below will be reversed, and the cause remanded.