### HIDALGO COUNTY WATER CONTROL & IMPROVEMENT DIST. NO. 1 v. GOODWIN et al. (No. 8100.)

Court of Civil Appeals of Texas. San Antonio. Feb. 6, 1929.

Rehearing Denied March 6, 1929.

See, also, 6 S.W.(2d) 231.

Neal A. Brown and Geo. P. Brown, both of Edinburg, and Don A. Bliss, of San Antonio, for plaintiff in error.

James R. Daugherty, of Beeville. and Vernon Hill, of Mission, for defendants in error.

SMITH, J. The contract out of which this controversy arose is as follows, the clauses deemed material to this discussion being italicized:

"State of Texas, County of Hidalgo.

"The contract this day made and entered into between the Hidalgo County Water Control & Improvement District No. 1 and E. M. Goodwin, is as follows:

"(a) It is contemplated by the said E. M. Goodwin that a water improvement district, or a water control and improvement district, shall be organized under the laws of Texas to embrace lands in Porciones 48, 49, 50. 51 and 52, in Hidalgo County, Texas, and after the incorporation of such a district, said district as so incorporated shall have the right *at its option* to contract with the said Hidalgo County Water Control and Improvement District No. 1, *as hereinafter set forth*, and that in the event no such district should be organized under the laws of the State of Texas, then the said E. M. Goodwin *at his option* shall have the right to contract with the said Hidalgo County Water Control and Improvement District No. 1 *upon the terms and under the conditions as hereinafter set forth.*

"(b) The contract herein provided *to be made* between the said Hidalgo County Control & Improvement District No. 1, Party of the First part, and the said E. M. Goodwin, Party of the Second part, is as follows:

"1. The said Hidalgo County Water Control & Improvement District No. 1 agrees with the said E. M. Goodwin that it will furnish unto the said E. M. Goodwin, or his assigns a supply of water sufficient to properly irrigate a minimum of 5,600 acres of land in said Porciones, and a maximum amount sufficient to irrigate 25,000 acres in said Porciones, for which the said E. M. Goodwin, or his assigns, is to pay the Hidalgo County Water Control & Improvement District No. 1 at the rate of $17.50 per acre as the price of a water right to be extended by the said Hidalgo County Water Control & Improvement District No. 1 to the lands embraced within the Water Improvement District or Water Control and Improvement District, to be organized, or included in the irrigation system installed by the said E. M. Goodwin, and being lands out of said Porciones 48, 49, 50, 51 and 52, the payment of said $17.50 per acre to be made as follows:

"On, or before nine (9) months from the ———— day of ————, 1926; it being understood, however, that it is contemplated by the E. M. Goodwin to perfect the organization of said Water Improvement or Water Control and Improvement District, and that bonds will be voted and marketed for the purpose of constructing the pumping plants

and canals, and of paying for the water right hereby contracted to be conveyed, it is further agreed that in the event the said E. M. Goodwin should be unavoidably delayed in the organization of said District and the marketing of the bonds of said District, as above provided for, upon satisfactory proof to the Board of Directors of the Hidalgo County Water Control & Improvement District No. 1 that fair and reasonable progress is being made in the perfection of said District and the marketing of said bonds, a reasonable extension of time for the payment of said $17.50 per acre to the Hidalgo County Water Control & Improvement District No. 1, shall be granted to the said E. M. Goodwin for the purpose of perfecting the organization of said District and the marketing of said bonds by said District.

"2. In addition to said charge for said water right, the said E. M. Goodwin agrees to pay to the said District at the rate of $2.50 per acre foot for each actual delivery of water, based on the price of fuel oil at $1.75 per barrel and for each 10 cents in excess in the price of said fuel oil per barrel said District shall have the right to increase said charge at the rate of 12 cents per acre foot, during such time as the price of said fuel oil shall be in excess of $1.75 per barrel; the minimum price to be $2.50 per acre foot, unless and in the event said District shall reduce the price of the water charge to the land owners within its District to a less sum than $2.50 per acre, then and in that event the rate herein provided for to be charged to the said E. M. Goodwin, or his assigns, shall be reduced proportionately to the reduction made to the land owners within said Hidalgo County Water Control & Improvement District No. 1.

"3. The said E. M. Goodwin agrees to pay for 250 acre feet of water for the first year after the said district to be organized by him, or the irrigation system to be established by him, is ready to receive water for the irrigation of said lands included therein, whether such water should be used or not, and that such fixed charge shall increase each year at the rate of 250 acre feet until the minimum yearly charge shall be for the same number of acre feet as the number of irrigable acres of land in the district to be organized or under the system to be established by the said E. M. Goodwin.

"4. Said charge for water shall be paid in advance by the said E. M. Goodwin, or his assigns to the said Hidalgo County Water Control & Improvement District No. 1, on the first day of November of each year to be credited upon the amount of water that said Goodwin actually takes from the canal of the Hidalgo County Water Control & Improvement District No. 1, during such year, provided, however, that all water in excess of said 250 acre feet shall be paid for in advance upon application of demand for the furnishing of said water for the irrigation of said additional land.

"5. Should the said E. M. Goodwin fail to pay unto the said District the said amount as hereinabove provided for then the said District shall have the right to shut off any water supply whatsoever until said charge is fully paid unto it with interest at the rate of ten per centum per annum from the date when such charge shall have accrued; and in case the said Goodwin should desire a greater supply of water over and above the minimum he pays for, then he shall pay cash to said District for any and all water that may be delivered to him under the terms of this contract, at the rate herein specified.

"6. A supply of water sufficient to irrigate all said lands as they become ready for irrigation shall be delivered by the said District in its canal, and the said Goodwin hereby agrees and binds himself to construct, maintain and operate at his own expense a pumping plant on said canal for the purpose of pumping water from the canal of said district, and the said Goodwin further binds himself and his assigns to install a meter at said pumping plant at his own expense, for the purpose of measuring the amount of water, the plans for the installation of said pumping plan and of said meter to be submitted to the Engineer of the District beforehand and to be approved by the said Engineer of the District. Said pumping plant and meter shall at all times be subject to inspection by the Engineer of said District, and said meter shall at all times be under the joint control of the Engineer of said District and the Engineer of the said E. M. Goodwin or his assigns, and any deficiencies therein shall be corrected and supplied by the said E. M. Goodwin, or his assigns.

"7. Should any lands be included in the District that is to be organized, which lands the said Hidalgo County Water Control & Improvement District No. 1 has agreed to supply with water under a contract, or contracts heretofore made, then the said lands shall be entitled to receive a supply of water under the terms of this contract at the price and under the terms hereinbefore set forth, regardless of what may have been the original contract or contracts between this District and the said person or persons owning said lands; provided, however, that if the said Hidalgo County Water Control & Improvement District No. 1 shall have heretofore contracted with any owner of land or lands that may be embraced within the limits of the District that the said Goodwin expects to be organized for a premium or price of a water right less than $17.50 per acre, as stipulated herein, the said Goodwin shall have the advantage of said price for said water rights; but, in no event shall he be entitled to receive the water actually supplied for a less rate per acre foot than herein specified.

"8. The privileges and rights herein, extended unto the said E. M. Goodwin by the terms of this contract shall be assignable by him to the said District that he expects to be organized and, when so assigned by him, shall in all respects be binding as between the said Hidalgo County Water Control & Improvement District No. 1, and such District that may be organized: In the event such a District should be organized and the said E. M. Goodwin should assign unto it all of his rights and privileges under the terms thereof, then the total amount of the price hereinbefore agreed upon for the water right, that is, the right to take water from the said canal of the said Hidalgo County Water Control & Improvement District No. 1 shall be paid in cash according to the terms of this contract by such District so organized.

"9. *Should it be necessary that any additional permit to take water from the Rio Grande River be secured in order to supply the lands to be supplied under the terms of this contract with water for irrigation purposes*, then the said Goodwin and his assigns bind themselves to secure such water permit and to convey same to Hidalgo County Water Control & Improvement District Number 1. It is further agreed, however, that in the event the said E. M. Goodwin should be unable to obtain a permit from the Board of Water Engineers to take water from the Rio Grande for the irrigation of said land, the Hidalgo County Water Control & Improvement District No. 1 hereby agrees to assign and transfer to the said E. M. Goodwin, or his assigns, a sufficient amount of water of the Rio Grande River, which is already owned by the said Hidalgo County Water Control & Improvement District No. 1.

"10. Should there at any time be a shortage of the supply of water within the Rio Grande River, then it is distinctly understood that the lands within the territorial limits of the said Hidalgo County Water Control & Improvement District No. 1 shall first be supplied with water before any water shall be supplied under the terms of this contract unto the lands hereinbefore mentioned in which event the said Hidalgo County Water Control & Improvement District No. 1 shall not be liable in damages for a failure to supply a sufficient amount of water to irrigate any lands under the terms of this contract.

"11. The said Goodwin or his assigns under the terms of this contract shall report to the Board of Directors of said Hidalgo County Water Control & Improvement District Number 1, the acreage to be irrigated and the character of the crops for the succeeding year on the first day of November of each year.

"The said Goodwin has this day paid unto the Hidalgo County Water Control & Improvement District Number 1, the sum of Twenty-five ($25.00) Dollars in cash, and the said Hidalgo County Water Control & Improvement District Number 1, hereby acknowledges the receipt of said sum of money as the consideration for this *option contract*.

"It is understood and agreed that this contract shall be binding upon the Hidalgo County Water Control & Improvement District No. 1 and upon its successors and assigns.

"This Contract to be signed in Duplicate and each of the parties to retain a copy hereof.

In Testimony whereof the Hidalgo County Water Control & Improvement District No. 1 has caused these presents to be signed by its President and countersigned by its Secretary, and the corporate seal hereunto affixed, and in testimony whereof witness the hand of the said E. M. Goodwin on this, the 26th day of June, A. D. 1926. Hidalgo Co. Water Control & Im. Dist. No. 1, by Emile Monney, President, Party of the First Part. E. M. Goodwin, Party of the Second Part.

"Attest: J. W. Hardin, Secretary."

■ The instrument as a whole constituted a mere option by its own express provisions. In paragraph (a) it is provided, as shown above, that Goodwin, or his named assign, "Shall have the right *at his or his assign's option* to contract," with the district, "as hereinafter set forth," and in paragraph (b) it is recited that "the contract herein provided *to be made* is as follows." The proposed contract, to be entered into at the option of defendants in error, is then set forth in eleven numbered paragraphs, at the conclusion of which it is recited that on the date of the contract Goodwin had paid plaintiff in error district the sum of $25, "as the consideration for this *option* contract." The intention of the parties to constitute the contract a mere option could not be more clearly or definitely expressed than in the terms employed.

It is conceded by plaintiff in error that defendants in error never exercised the option to enter into the proposed contract, and that that contract was never entered into by the parties.

Plaintiff in error has singled out paragraph 9 of the proposed contract, and asserts that, by the terms of the whole instrument, the provisions of that particular paragraph constitute an independent and absolute contract upon the part of defendants in error to do and perform the obligations therein provided for, although conceding in effect that no other provision of the proposed contract is effectual.

■ Plaintiff in error asserts in the alternative that, if the contract should be construed as a mere option to enter into the proposed contract as embraced in the numbered paragraphs of the instrument, then it was the intention of the parties that paragraph 9 should be an independent and binding obligation of defendants in error, notwithstanding the optional character of the contract as a whole. Plaintiff in error asserts that this intention is disclosed by the circumstances

leading up to and surrounding the execution of the option agreement, as shown by parol evidence, and seeks to reform the contract so as to effectuate that intention, and to enforce specific performance of the instrument as so reformed. Much evidence was introduced under this contention, which was vigorously contested by defendants in error. There was a sharp conflict in this evidence. It was resolved against plaintiff in error by the trial judge whose finding thereon is binding upon this court.

We conclude that by its own provisions, viewed at large, the instrument clearly conferred upon defendants in error the option to enter into the proposed contract set out in the numbered paragraphs of the instrument, and that, because defendants in error elected not to exercise that option, the proposed contract was never vitalized into an obligation binding upon either party. But, even if there could arise from the language of the instrument a doubt of the optional nature of the agreement, that doubt has been effectually resolved against plaintiff in error by the findings of the trial court, fortified by ample evidence in support of those findings, which we adopt as the findings of this court.

Plaintiff in error does not contend that any of the provisions of the proposed agreement embraced within the option contract, other than those in paragraph 9, are enforceable against defendants in error, as independent and binding obligations upon the parties, although all the provisions of all the eleven paragraphs in the proposed agreement are obviously of equal dignity and force. Goodwin planned to purchase certain lands and bring them under an irrigation system to be owned and operated privately, or by a public irrigation district, but could not afford to purchase them until assured in advance, and in any event, of water rights for them. With this purpose in mind he began negotiations with plaintiff in error district, whose officials he fully informed of his plans. His object, fully disclosed to plaintiff in error, was to obtain an option to procure water from plaintiff in error district with which to irrigate the lands he proposed to purchase, so that with this option secured he could proceed with his plans with the assurance of water in any event, if not through his own direct operations, then through the exercise of this option.

The option contract in controversy resulted from these negotiations. By this contract plaintiff in error bound itself, in event of Goodwin's election thereto, to supply Goodwin or his assigns with all the water requisite to the irrigation of the lands he had then contracted for or that he might subsequently acquire in his project, within a prescribed territory, not to exceed 25,000 acres, for which water rights, if obtained from plaintiff in error by the exercise of the option granted, Goodwin or his assigns were

to pay plaintiff in error district the prices and upon the terms stipulated in the proposed contract. The provisions concerning this subject comprise the first eight sections of the proposed agreement embraced in the option contract. These provisions are folllowed by section 9 of the proposed contract now sought by plaintiff in error district to be reformed and specifically enforced as reformed as an independent and absolute contract, notwithstanding the fact that defendants in error never elected to exercise their option to make that contract, which was in fact never entered into by the parties. No reason appears for singling out said section 9 from the eleven sections in the proposed agreement or for giving it any more force than all or either of the other ten sections. All the eleven sections are interdependent. To set out either of them and give it a different force or status from the others would serve to place the whole proposed agreement awry. This is especially true of section 9, the operation and effect of which is peculiarly dependent upon the preceding eight sections. This is apparent from the very language of section 9, as is shown by a consideration of that language. In the first eight sections provision is made that, in the event defendants in error exercise their option to enter into the proposed contract, plaintiff in error district shall supply defendants in error's 25,000 acre block of land with water with which to irrigate those lands. After the expression of this object in the first eight sections, it is provided in the ninth that, "should it be necessary that any additional permit to take water from the Rio Grande River be secured in order to supply the lands *to be supplied under the terms of this contract* with water for irrigation purposes," then the provisions in section 9 shall be effective; that is to say, that, should the necessity therefor arise by reason of operations under sections 1 to 8, Goodwin and his assigns bind themselves, as provided in section 9, to procure such permit and convey it to plaintiff in error district. In other words, by the express language of section 9 the provisions therein were to become effective only in the event defendants in error exercised their option to enter into the contract obligating plaintiff in error district to supply the water and water rights necessary to irrigate defendants in error's lands, under the provisions of sections 1 to 8 of the proposed contract, and only in the event an additional permit should be required by plaintiff in error in performing that obligation. A necessary inference from the language of section 9 is that, if this additional permit should be necessary to enable plaintiff in error district to supply the water it obligated itself in the preceding sections to supply to defendants in error, at their election, then, and only in such event, such permit should be procured and assigned to plaintiff in error district, thus

co-ordinating its powers with the duties imposed upon it in sections 1 to 8, inclusive. Sections 1 to 8 formed the foundation and the only reason for section 9, and by its own terms the latter could be vitalized only by the active operation of the former. Not only is it true that defendants in error refused to exercise the clearly expressed option to enter into the proposed contract embracing sections 1 to 11, inclusive, but plaintiff in error district itself refused to enter into that part of the agreement embraced in sections 1 to 8, inclusive. And yet the whole purpose of this suit by plaintiff in error is to require defendants in error to specifically perform as to section 9. The position is wholly untenable.

Electing not to exercise his option to contract with plaintiff in error district for water rights, Goodwin applied to the state board for a permit and for appropriations out of the Rio Grande and obtained them, and with these appropriations as a basis proceeded with his plans for a district. He organized the Hidalgo County water control and improvement district No. 6, and conveyed to that district all his interest in the whole transaction. The newly created district issued the necessary bonds, built its own irrigation system, and from that system is now irrigating the lands in question under permits obtained by Goodwin from the state. Goodwin had this very plan in mind, as an alternative to the exercise of his option to make the agreement embraced in sections 1 to 8 of the option contract, throughout all his negotiations with plaintiff in error district, whose officials were fully cognizant of his plan at all times, before and after granting the option to him.

Plaintiff in error district now demands that the newly created district No. 6, one of the defendants in error, convey this permit to plaintiff in error, contending that defendants in error were obligated so to do under section 9 of the optional contract, which was never entered into.

It is apropos of this contention that we have expressed the conclusion that section 9 is inoperative, since the contract embracing that section was never entered into by the parties, and since the contingency expressly provided for in said section as a condition precedent to its vitality has never happened, and cannot be forced. Moreover, the trial court found, upon sufficient evidence, that it was the intention of the parties to give effect to the contract as written and as here construed.

Plaintiff in error contends that it had existing permits from the state to appropriate waters from the Rio Grande for the purpose of irrigating the lands purchased by Goodwin and now embraced within the bounds of defendant in error district No. 6; that, relying upon Goodwin's agreement in section 9 of the optional agreement to convey to plaintiff in error any permits he might obtain covering said lands, plaintiff in error waived its permits and appropriations, and aided Goodwin in procuring said rights; that, without such waivers and assistance, Goodwin could not have obtained said permits or appropriations; that, because of these circumstances, defendant in error is estopped to deny plaintiff in error's right to an assignment of those benefits. The trial court found that plaintiff in error did not in fact own or hold the claimed permits, and, moreover, that plaintiff in error was not deceived into waiving its rights in said appropriations, but voluntarily waived them in pursuance of its general policy to help and encourage the operation of such improvement districts as an aid to the development of that section. The evidence fully warranted this latter finding, which renders it unnecessary for this court to determine the question of whether or not plaintiff in error district in fact owned valid water appropriations covering the lands in question, at the time it waived its claims thereon.

The transcript and statement of facts cover about 1,000 typewritten pages, and the briefs of the parties nearly 600 printed pages, presenting 47 assignments of error, 37 "questions of law," and 30 propositions of law. The conclusions expressed above have the effect of disposing of all the material questions raised, rendering it unnecessary to discuss the remaining points presented, unless it be those now to be briefly mentioned. In many assignments of error complaint is made of qualification appended by the trial court to plaintiff in error's bills of exception, but the rules of pratice provide for such qualification, and those assignments are without merit. Complaint is also made of findings of fact made or refused by the trial court, but the evidence is deemed sufficient to support the findings complained of, and no error is shown in rejecting those proposed by plaintiff in error. Complaint is made of the admission of certain evidence, but no prejudicial error is shown by these complaints. Plaintiff in error also complains of the refusal of the court to grant a jury trial, but the facts recited in the judgment concerning this matter show clearly that the trial court was fully justified in his ruling.

The judgment is affirmed.

COBBS, J. Plaintiff in error sued defendants in error for the specific performance of a contract in writing between said parties. The petition of plaintiff in error alleged that the said Goodwin had obtained the water appropriation referred to in clause No. 9 of said contract from the state board of water engineers, but had not only failed and refused to comply with said clause of said written contract, but had, in direct violation of said clause, conveyed the said appropriation unto the other defendant in error, the Hidalgo county water control and improvement district No. 6, which had full knowledge

and notice at the time of said conveyance to it of the terms of the said contract between the plaintiff in error and the defendant in error Goodwin.

Plaintiff in error in the alternative, in case the court should hold that it was not entitled to specific performance, sought to recover of both defendants in error and of each of them the value of said water appropriation, alleging such value to be the sum of $437,500. Plaintiff in error also prayed for general relief.

In its original petition, plaintiff in error made the entire contract in writing between it and the defendant in error Goodwin an exhibit.

At the instance of defendant in error, the case was set for trial on November 3, 1927, to which plaintiff in error agreed. At that time plaintiff in error had made no demand for a jury, and did not know that there was no jury for that particular week.

On said 3d day of November, A. D. 1927, the trial court sustained a general demurrer to plaintiff in error's original petition and also a special exception, and plaintiff in error, with leave of the court, prepared and filed its first amended original petition in which it still sued on said clause in said written contract for a specific performance, but, in the event that the court should persist in holding that the entire contract from beginning to end was a mere option, and that, under the terms of said contract as expressed in the writing, the said Goodwin had the right to do as he pleased with the said water appropriation, then the plaintiff in error prayed for a reformation of the contract so as to express the true intention of the parties with reference to said water appropriation and then enforce the specific performance of the said contract with reference to said water appropriation as the contract should be reformed, setting up all the facts and circumstances attending the transaction.

In the alternative, plaintiff in error sought to recover of the said Goodwin damages in said amount on account of a fraud perpetrated upon plaintiff in error by the said Goodwin, setting up all the facts.

The defendants in error pleaded a general demurrer and a number of special exceptions to plaintiff in error's first amended original petition, and also pleaded a general denial and a special answer.

Plaintiff in error specially excepted to the special answer of defendants in error.

The trial court, after overruling a motion of plaintiff in error for a jury trial, proceeded to try the cause without a jury; and on November 27, 1927, rendered judgment that plaintiff in error take nothing, and that the defendants in error go without day and recover of plaintiff in error all costs of the suit.

The court made and filed his findings of fact and conclusions of law, which plaintiff in error contends were made by defendants in error's attorney and are erroneous. We do not think the court, under the circumstances, committed any error in refusing a jury trial to plaintiff in error, and this objection is overruled.

What seems to be the main question in the case grows out of the controversy arising between the parties as to the proper construction of the terms of the contract in respect to E. M. Goodwin's supposed or claimed obligation to acquire certain water rights and thereafter to convey the same to plaintiff in error, when acquired.

Plaintiff in error was the owner of water appropriations covering porciones 48, 49, 50, 51, and 52 in Hidalgo county. It had constructed main canals of sufficient capacity to irrigate about 40,000 acres of plaintiff in error's lands and all the lands capable of irrigation in said porciones. And, when plaintiff in error was completing the construction of its new pumping site at the village of Penitas, and about to finish the construction of its main canal, about 13 miles long, connecting said pumping plant with the irrigation system in its district, the defendant in error Goodwin, who had acquired an option to purchase about 5,000 acres in porciones 51 and 52, commenced negotiations with plaintiff in error to acquire a permanent water right from plaintiff in error to irrigate said lands of which he held an option to purchase, with additional land as he might acquire an option on. During these negotiations Goodwin conceived the plan of organizing a new water control and improvement district to embrace within its limits the lands in which he had acquired an option to purchase, being 5,000 acres in porciones 51 and 52 and other lands in the five porciones.

The purpose of the parties was that Goodwin should purchase from the plaintiff in error a permanent water right appurtenant to said lands and procure an actual supply of water for said lands, and plaintiff in error to sell to Goodwin said permanent water right and to furnish such actual supply of water.

The record in this case is very voluminous. The transcript contains 220 pages and the statement of facts contains 514 pages. Plaintiff in error filed a printed brief containing 241 pages, a supplemental printed brief containing 117 pages, and then a typewritten reply brief containing 28 pages. Defendant in error filed a printed brief containing 171 pages.

As the real question involved, to my way of thinking, is as to the effect of the contract in respect to defendant in error's obligation to convey unto plaintiff in error the water right in question that it acquired or was to acquire, so we have mainly determined the entire controversy by passing on that question.

Paragraph 8 expressly allows plaintiff in error to assign the contract.

The contract expressly and specifically obligates Goodwin, in paragraph 9, as follows:

"Should it be necessary that any additional permit to take water from the Rio Grande River be secured in order to supply the lands to be supplied under the terms of this contract with water for irrigation purposes, then the said Goodwin and his assigns bind themselves to secure such water permit and to convey same to Hidalgo County Water Control & Improvement District Number One. It is further agreed, however, that in the event the said E. M. Goodwin should be unable to obtain a permit from the Board of Water Engineers to take water from the Rio Grande for the irrigation of said land, the Hidalgo County Water Control & Improvement District No. 1 hereby agrees to assign and transfer to the said E. M. Goodwin, or his assigns, a sufficient amount of water for the irrigation of said lands from the appropriation of water of the Rio Grande River, which is already owned by the said Hidalgo County Water Control and Improvement District No. 1."

There is no question as to the fact that plaintiff in error, as a part of the consideration of the contract, and because the court so found, that it aided the defendants in error and thereby waived its prior claim and rights and assisted as he had contracted to do, in favor of defendant in error to secure the additional water rights appropriation. Goodwin secured the additional right to secure the water as is mentioned in the ninth paragraph for irrigation purposes.

From the view I take of this contract, it is not altogether optional but it was an express contract to procure for the use and benefit of said proposed district a necessary permit from the state board of water engineers of the state of Texas to take water from the Rio Grande river, for the purpose of irrigating said lands to be included in said proposed district, which said appropriation shall be conveyed to said district No. 1 if that be necessary in order to carry out the provisions to be inserted in the contract for furnishing water to said lands for the purposes therein set out. Whether we call this an option or a contract, it is a valid and enforceable stipulation; it was acted upon and the water permit was secured. Corsicana Petroleum Co. v. Owens, 110 Tex. 571, 222 S. W. 154, cited in Commerce Realty Co. v. Warner Bros. Pictures (Tex. Civ. App.) 8 S. W.(2d) 191. The opinion of the majority of the court, by holding it an option contract, ignores the same as a binding obligation.

We see no allegations of fraud or ambiguity or mistake alleged that would permit parol proof to vary it. As a question of law, as it is here, in the absence of fraud or mistake, parol testimony is not admissible to explain the transaction.

There is no question of forfeiture involved in this case against the plaintiff in error. Forfeitures generally are obnoxious. The state was the owner of the use of the water in the Rio Grande on its border, and had the sole right to force or waive a forfeiture, which it has not done. Only the state board of water engineers was empowered with authority to cause a forfeiture and cancel a water appropriation once made.

The court said in Imperial Irrigation Co. v. Jayne, 104 Tex. 395, 138 S. W. 575, Ann. Cas. 1914B, 322, that laws relating to irrigation should be liberally construed and given such effect as to best promote irrigation and thereby carry out the purpose of the Legislature. To the same effect is the holding in Flatan v. State, 56 Tex. 93.

And, further, we see no facts that would justify the application of the statute of frauds.

The provisions of the contract provide for the organization of a water improvement district to be made by the parties hereto.

It then provides that plaintiff in error will furnish Goodwin a minimum of 5,000 acres of land and a maximum amount to irrigate 25,000 acres for which Goodwin is to pay at the rate of $17.50 per acre for land included within the system installed by Goodwin.

Paragraphs 2 to 7, inclusive, provide the manner of payment and forfeiture for nonpayment and inspection. Paragraph No. 8 provides for the assignment of the contract. Paragraph No. 9 is as first set forth herein in full.

Paragraph No. 10 provides in respect to water shortage.

Paragraph No. 11 provides for Goodwin to make annual reports of the acreage and the payment by Goodwin of $25 in cash, and "acknowledges the receipt of said sum of money as the consideration for this option contract," and that the contract is binding upon the plaintiff in error and its successors.

This is all there is to the contract, or so-called option. The contract is not as stated in the majority opinion. The majority opinion has not correctly stated the provisions of the contract at all. But the majority opinion does truly state that Goodwin paid the consideration of $25. Well, what becomes of that payment? Shall appellee be allowed to put it in his pocket and when called upon to perform say, "O, no, it was an option contract and in no way binding."

It is not conceded at all that defendants in error ever "exercised the option to enter into the proposed contract," because it became a binding contract from the very moment of its acceptance and the organization of the corporation and work commenced and done under it. Besides, it was clearly shown that it "secured the additional permit to take water," as is provided for in said paragraph 9. It is not remarkable at all that no other provision of the contract was stated than

that contained in paragraph No. 9. There was no doubt or ambiguity in its clearly plain statement.

The findings of the trial court in the construction of the contract are in plain and obvious conflict with the clearly, distinctly written provisions of the written instrument itself. I do insist that each and every provision besides that contained in paragraph No. 9 are binding upon defendants in error and refer each to the other.

I do not know what was the "thought behind Goodwin's brow," but do know that he organized his company under this so-called optional agreement and no other.

I do not very well appreciate that portion of the court's opinion that "no reason appears for singling out said section No. 9" any more than the action of this court does in eliminating the section. It is the only material one between the parties under consideration; without it there would be no case here.

The eleven sections are "interdependent," and we fail to see how the section 9, the most important of the whole controversy, can possibly place the "whole proposed agreement awry"; that is, twisted or one-sided or erroneous.

The evidence in this case shows that Judge Bliss, representing plaintiff in error at the time the contract was entered into, refused to sign the agreement as was presented and protested against it with the provisions of number 9 left out, and, after much discussion, Goodwin waived the point, and accepted the contention of Judge Bliss as expressed in No. 9. Men are ordinarily held bound by what they write and sign. This contract was deliberately entered into. Suppose we agree that it was an option contract, still such are enforceable, as shown by the opinion of Chief Justice Phillips in Corsicana Petroleum Co. v. Owens, 110 Tex. 571, 222 S. W. 154, supra.

The only material question involved is to determine whether under the contract itself the defendant in error was so bound in writing to convey the water permit to plaintiff in error when he acquired it, or was, as said in the majority opinion herein, a mere option not binding upon any one, just a little plaything.

The amended petition of the Hidalgo county water control and improvement district set up all the facts surrounding the parties at the time the contract was made and the object and purpose that the parties had in view with more detail than was alleged in the original petition, and prayed for a reformation of the contract so as to express the real intention of the parties to the contract showing that it was the intention of the parties to the contract that any new water appropriation obtained by Goodwin was to be conveyed unto the Hidalgo county water control and improvement district, regardless of whether he or his assignee should exercise the option to purchase a permanent water right from said district or not. And it will be observed that this amended original petition set up distinctly the fact that, in consideration of his agreement to convey such new water appropriation unto said district, the said district waived its prior appropriation in his favor, and surrendered to him the benefit of the contracts it had made with divers owners of land to which the district had already extended permanent water rights and for which these owners were to pay unto said district amounts from $15 to $25 per acre, aggregating about $35,000.

The contract actually entered into was drafted entirely by Goodwin and his attorney.

The testimony showed that Wade Bliss brought to the conference in an office in San Antonio a draft of the contract prepared by him as understood by the board of directors of the district. That occurred previous to the execution of the contract. The testimony further showed that Goodwin and his attorney brought with them a draft of the contract as Goodwin understood it. The draft prepared by Wade Bliss is set forth on pages 61–64 of the original brief of plaintiff in error; and the draft prepared by Goodwin's attorney is found on pages 111–117 of said brief.

While Goodwin testified that there was no discussion whatever between him and his attorney on the one side and Bliss, as the attorney for the Edinburg district, Wade Bliss, Della Guerra, and Don A. Bliss testified positively that there was a discussion of clause 7 of the draft of the contract made by Goodwin and his attorney that had been brought with them to the conference at San Antonio, and that Don A. Bliss positively refused to agree to this clause 7, which appears on page 115 of the original brief filed by plaintiff in error, and that this discussion lasted practically the whole day, ending in an agreement that, if any new appropriation should be obtained by Goodwin from the state board of water engineers, this new appropriation should be conveyed unto the Edinburg district, and that Goodwin and his attorney took all the papers with them, including the draft that had been made by Wade Bliss, the draft that had been made by Goodwin's attorney, prior to the conference, and the draft that Don A. Bliss had made. It was further shown that Dawson, the attorney of Goodwin, at the conference, fell sick that afternoon before he and Goodwin went away, taking with them the documents, with the promise that they would return next morning with a draft of the contract and submit the same to Don A. Bliss.

It was undisputed that Goodwin returned the next morning with duplicates of the contract that he said had been dictated by Mr. Dawson, and it is further undisputed that Bliss looked over this contract and discov-

ered that the stipulation requiring Goodwin to convey to the Edinburg district any new water appropriation that he might obtain from the state board of water engineers had been omitted. And it is undisputed that, after it was called to his attention; Goodwin stated that this omission was an oversight, and the language of the draft was then and there changed by Wade Bliss so as to require Goodwin, in case he obtained a new water appropriation, to convey it to the Edinburg district.

The clause of the draft made by Dawson, the attorney for Goodwin, that was brought by Goodwin and his attorney to the conference at San Antonio, being clause 7, and the clause of the contract actually executed, being clause 9 thereof, are set forth side by side on page 91 of the supplemental brief for plaintiff in error, the Edinburg district.

By the terms of the contract that was actually executed, which is set forth in full on pages 9 to 15 of plaintiff in error's original brief, the district surrendered unto Goodwin the benefits of the contracts that the district had already made extending permanent water rights to lands, for which the owners had bound themselves to pay to the district from $15 to $25 per acre, aggregating about $35,000, where such lands should be included in the new district to be organized by Goodwin. Clause 7 of the contract, found on pages 12–13 of the original brief, shows this surrender, though it does not state the particular lands nor the prices for the water rights that the district was to receive from the owners.

The testimony is undisputed that Goodwin requested Bliss to appear before the state board of water engineers and help him get a new water appropriation, and that the district directed Bliss, as its attorney, to appear before the state board of water engineers and waive in favor of Goodwin the water appropriations that the district already owned and aid Mr. Goodwin in getting a new water appropriation. The undisputed testimony further shows that Goodwin and his attorney deemed it necessary to get the new appropriation for fear that the appropriations that the district claimed to own, covering the lands, might have lapsed by reason of nonuser and abandonment.

Goodwin could not have obtained the new appropriation from the state board of water engineers without the district waiving the prior rights which it claimed.

I cannot agree with my associates in the statement made in their opinion that the giving a construction to clause 9 of the contract, which its language plainly imports, that, if Goodwin obtained a new water appropriation, he was bound to convey it unto plaintiff in error, "would serve to place the whole proposed agreement awry." I cannot see how the construction of the contract claimed by plaintiff in error as requiring Goodwin to convey the additional water ap-

propriation unto plaintiff in error if he should obtain the same can put the other provisions in the contract awry. The stipulation in clause 9 of the contract plainly states that: "*Should it be necessary that any additional permit to take water* from the Rio Grande be secured in order to supply the lands to be supplied under the terms of this contract with water for irrigation purposes, then the said Goodwin and his assigns bind themselves to secure such water permit· and to convey the same to the Hidalgo County Water Control & Improvement District Number One." Now, Goodwin was contracting with plaintiff in error to obtain an option to purchase from it a permanent water right, that portion of plaintiff in error's appropriations covering the lands. This necessarily presupposes that plaintiff in error owned a water appropriation covering the lands, for plaintiff in error would have had no right nor power to grant unto him a permanent water right unless it already owned an appropriation or appropriations covering the lands. The stipulation in clause 9 of the contract necessarily contemplates something to be done by Goodwin and his assigns *after* he and plaintiff in error had entered into a binding contract by the terms of which plaintiff in error should extend to his lands a permanent water right and bind itself to furnish an actual supply of water for irrigation purposes at the prices set forth. In other words, this stipulation could not possibly take effect until after such binding contract had been entered into by Goodwin or his assigns availing himself or themselves of the option to purchase such permanent water right from plaintiff in error, for it could not be determined whether any additional permit—water appropriation—would be necessary until it should be found that the permanent water right—appropriation—extended to the lands by plaintiff in error was insufficient to supply the lands with water for irrigation purposes. The language in the stipulation cannot receive any other reasonable construction. Evidently the parties had in mind the possibility that the water appropriations covering the lands owned by plaintiff in error might not be sufficient to furnish a full water supply for the irrigation of the lands after Goodwin or his assigns should have commenced actually using water from the main canal of plaintiff in error. Thus the construction of the stipulation in said clause 9 of the contract contended for by plaintiff in error, not only does not put the other provisions in the contract awry, but is perfectly consistent with the other provisions of the contract. Whereas, the construction of this stipulation contended for by defendants in error appears to me to twist and distort the real meaning of this stipulation.

Thus Goodwin got the benefit of the waiver on the part of the district of its prior rights, and also got the benefit of including

in his district the lands to which the Hidalgo county water control and improvement district had already extended permanent water rights, for which said Hidalgo county district was to receive an aggregate amount of at least $35,000.

This case was assigned to me to write the opinion of the court, which I did, but Judge SMITH, not liking it, wrote an opinion in which Judge FLY concurred, thus making it the majority opinion.

To my mind it is clear that plaintiff in error is in the right in demanding a specific performance of the contract, or in the alternative for damages.

As much as I regret it, I feel compelled to disagree with the majority and file this as my dissent. I would not do so but for the plain error that my associates have fallen into.